Argued and submitted April 7, affirmed on appeal and on cross-appeal
August 9, 1995

CONSTANT VELOCITY CORPORATION,
*Appellant - Cross-Respondent,*

*v.*

CITY OF AURORA,
Sue Engels, Heather Wechter,
Bill Carr, Mary Hellhake and Jean Grossnickle,
*Respondents - Cross-Appellants.*

(93C 11197; CA A83308)

901 P2d 258

Roger J. Sharp argued the cause and filed the briefs for appellant - cross-respondent.

Thomas W. McPherson argued the cause for respondents - cross-appellants. With him on the briefs was Mersereau & Shannon.

Before Warren, Presiding Judge, and Landau and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

In this writ of review action, plaintiff appeals a circuit court judgment holding that the City of Aurora had erred in assessing plaintiff $14,307.70 for costs of abatement of a nuisance, and that the assessment should have been $4,163.50. The city cross-appeals,[1] assigning error to the trial court's reduction in the assessment. We affirm on appeal and on cross-appeal.

The facts relevant to this appeal are that plaintiff owned a building that was located within the historic district of the city of Aurora. In July 1990 there was a major fire in the building, which left only the exterior concrete walls standing. At a May 28, 1991, meeting, the Aurora City Council declared that the building was a nuisance. The next day, the city sent plaintiff a notice, which read:

"NOTICE IS HEREBY GIVEN the Aurora City Council has determined a nuisance to exist at 21491 Main Street NE, Aurora, Oregon. Pursuant to the provisions of Ordinance No. 288, Section 20, the City Council has directed that said nuisance be abated within ten (10) days of the date of this Notice. The nuisance, as provided in Ordinance No. 288, Section 6, consists of a dangerous building, four concrete walls remaining from a structure destroyed by fire on July 22, 1990, said walls determined to be unstable by a professional engineer.

"Unless the unstable walls are removed by the person responsible, the City may abate the nuisance. The costs of such abatement will be charged to the property owner, and may become a lien on the property. Further, failure to abate the dangerous building may result in the imposition of a fine, which may become a lien on the property.

"The owner of the property on which the nuisance exists may protest the order to abate by filing written notice with the City Recorder, in accordance with all provisions of Ordinance No. 288, Section 21, within ten (10) days of the date of this Notice."

In January 1992, the city had the building destroyed, after plaintiff had not abated the nuisance. It removed the walls, filled in the basement and graded and compacted the fill. In

---

[1] Although a cross-appeal was filed on behalf of the individual defendants, no issue on appeal or on cross-appeal involves them.

order to fill in the basement, the city had to have towed a number of vehicles that were in the open basement.

The city issued a resolution in which it assessed costs of abatement in the amount of $31,597.76.[2] Plaintiff objected to the costs, but the city did not resolve those objections. Plaintiff then filed a writ of review, challenging the city's assessment. In a judgment entered in that writ of review action, the court held that the city had not followed its procedures, and that it had not heard and determined plaintiff's objections to the costs assessed. It ordered that the city give notice of and conduct a hearing to determine plaintiff's objections. It also held that the costs that could be assessed included only those costs for actual physical removal of the nuisance.[3]

On February 3, 1993, the city sent a second notice of assessment for the cost of abatement, which sought $14,831.30. The notice set a hearing for February 23, 1993, at which time the city council would consider any objections filed as to the original assessment as well as any additional objections to the second notice of assessment. On February 23, the city council heard the objections. It accepted plaintiff's objection to certain costs, and issued Resolution No. 246, in which it determined that the amount of the assessment should be $14,307.70.

Plaintiff then filed the petition for a writ of review that is the subject of this appeal. In its petition, plaintiff asserted that the city erred in various ways in assessing costs for abatement of the nuisance, including failing to follow the procedure set out in Ordinance No. 288, which governs public nuisances, assessing costs that are not appropriate costs of abatement, and in improperly construing the city ordinance in declaring the building a nuisance and abating the nuisance. The petition also alleged that Resolution No. 246 is not supported by substantial evidence. The trial court issued the writ, and the city filed its return. In December 1993, the court held a hearing on the writ. It entered a judgment holding that

---

[2] The assessment included costs of abatement plus 10 percent administrative overhead allowed by the nuisance ordinance, Ordinance No. 288.

[3] Plaintiff apparently did not object in that proceeding to the addition of administrative overhead, and it does not challenge that additional cost in this appeal.

the city had followed proper procedures. In particular, the court found that, contrary to plaintiff's argument, Ordinance No. 315, which provides a procedure for alteration or demolition of historic buildings, did not apply in this nuisance abatement proceeding. It also found that the actual cost of physical removal of the nuisance, plus administrative overhead, was $4,163.50, not $14,307.70. Plaintiff appeals, arguing that the trial court erred in holding that any costs could be assessed. The city cross-appeals, arguing that the court erred in reducing the costs of abatement from $14,307.70 to $4,163.50.

■     We review the trial court's ruling on a writ of review in the same "manner and with like effect as from a judgment of a circuit court in an action." ORS 34.100. ORS 34.040 provides that the trial court reviews the city council's actions to determine whether it, among other things:

"(2)   Failed to follow the procedure applicable to the matter before it;

"(3)   Made a finding or order not supported by substantial evidence in the whole record; [or]

"(4)   Improperly construed the applicable law * * *

"* * * * *

"to the injury of some substantial interest of the plaintiff, and not otherwise."

If the reviewing court concludes that the city council erred, it has the power to, *inter alia*, affirm, modify or reverse the city council's decision. ORS 34.100. In reviewing the trial court's determination, we consider the record that was before the city council. *See Caffey v. Lane County*, 75 Or App 399, 706 P2d 590 (1985).

Plaintiff first assigns error to the trial court's finding that Ordinance No. 315 does not apply to nuisance abatement proceedings such as this one. Plaintiff argues that the city failed to follow proper procedures in this case because it did not apply Ordinance No. 315, which plaintiff argues required the city to obtain a "certificate of appropriateness" before it could demolish plaintiff's building. According to plaintiff, because the city did not obtain a certificate of appropriateness, it demolished the building without authority. The city responds that we should not consider this issue. It argues first

that plaintiff's assertion that Ordinance No. 315 applies is, in reality, a challenge to the original determination that a nuisance existed, which the city asserts was a separate decision that was not timely challenged. Second, it argues that, as a result of previous litigation regarding the declaration of nuisance, plaintiff is barred by claim or issue preclusion from challenging the validity of the original declaration of nuisance. The city finally argues that, if the issue is properly before us, the record supports the lawfulness of the city's declaration of the nuisance.

Ordinance No. 315, section 9.53, provides, in part:

"It is unlawful for any person to demolish, destruct or alter * * * any improvements which lie within the Historic District * * * without first obtaining written approval to do so as provided in the application procedure below."

The ordinance then sets out a procedure for applications for a certificate of appropriateness, including an application form and standards by which the application will be judged. Its guidelines for dismantling of historic structures provide that "[a] structure must be a nuisance and no other alternatives determined before it may be dismantled."

■ It is apparent from reading the ordinance that its provisions would apply, if at all, to a decision whether to demolish the building, not to the city's decision about whether the building constituted a nuisance in the first place. The certificate of appropriateness authorizes the demolition or alteration of a historic building. It has nothing whatever to do with whether a historic building constitutes a public nuisance. Therefore, if plaintiff were to prevail in its assertion that the city was required but failed to apply Ordinance No. 315, that determination would not disturb the original declaration of nuisance. Thus, even if the city is correct that plaintiff may not challenge the original declaration of nuisance, we are not barred from considering plaintiff's arguments about the applicability of Ordinance No. 315, because they relate to the abatement and assessment process.

■■ Plaintiff argues that Ordinance No. 315 required the city to obtain a certificate of appropriateness before it could demolish the building. We conclude that Ordinance No. 315 does not apply to the city's abatement of a nuisance. The

ordinance requires that an application be made to the Cultural Resources Management Commission (CRMC) for a certificate of appropriateness. Ordinance No. 315, section 9.53. Section 8.00 of the ordinance defines an "applicant" as "[t]he owner of the affected property, or such owner's authorized representative." The city, which caused the demolition of the building, was not the owner of the property, and therefore could not be an applicant who could apply for a certificate of appropriateness. That conclusion is supported both by the definition of "applicant" and by the introductory paragraph to the Specific Guidelines for the Aurora Colony Historic District, which says, "Because of Ordinance No. 315, *property owners* must apply for a permit to create changes within the Aurora Colony Historic District." (Emphasis supplied.) The ordinance did not require the city to obtain a certificate of appropriateness before it demolished the building owned by plaintiff.[4]

Because Ordinance No. 315 does not apply to the city's nuisance abatement procedure, the city's failure to apply it was not error. Plaintiff's first assignment of error fails.

Plaintiff next assigns error to the trial court's finding that the city "followed all applicable procedures in Ordinance No. 288 with respect to this property." Its argument that the city did not follow procedures required by Ordinance No. 288 is based on its assertion that the city was required to and did not apply Ordinance No. 315. Plaintiff's third assignment of error is similarly based on the argument that Ordinance No. 315 applied. Because we have determined in the first assignment that *Ordinance No. 315 did not apply to the city's*

---

[4] Even if the city were required to comply with the ordinance and obtain a certificate of appropriateness from the CRMC before.it could demolish the historic building, plaintiff did not follow the procedure for challenging the city's failure to comply. Section 5.20 of Ordinance No. 315 provides that, "[w]henever a violation of this Ordinance is alleged to have occurred, a signed, written complaint may be filed by any individual." The section then provides for investigation of the complaint and provides that the city recorder shall "take action as provided by this Ordinance." Plaintiff never filed a complaint alleging a violation of the ordinance. Further, the remedy for a violation is a civil penalty not to exceed $100 per violation. Section 5.30. Therefore, even if the city had violated the ordinance, the remedy would be a fine against the city for the violation; there is no provision for the relief that plaintiff seeks, *i.e.*, its freedom from assessment of costs for abatement of the nuisance.

abatement of the nuisance, plaintiff's second and third assignments fail as well.[5]

On cross-appeal, the city challenges the trial court's determination that the only costs of actual, physical removal of the nuisance are those costs relating to removing the walls of the building, and that they do not include costs of removing vehicles from the open pit that were left when the walls were removed or of filling in and compacting the fill dirt in the open pit. The city argues that there was substantial evidence to support its assessment of the costs of removing the walls, filling in the basement, and removing the cars.

Plaintiff responds that, to the extent the city is entitled to assess any costs for abatement, the trial court properly limited those costs to the costs of removing the walls. Plaintiff argues that the open pit left as a result of the removal of the walls, if it was a nuisance, constituted a separate nuisance from the one that was required by the notice of nuisance to be abated. It also asserts that, even if the open pit was a nuisance, plaintiff should have been given an opportunity to abate the nuisance, for example, by fencing the property to prevent the danger caused by the open pit, rather than by filling it in.

██ We review the city's assessment for substantial evidence. ORS 34.040. Substantial evidence under ORS 34.040 is evidence that a reasonable person could accept as adequate to support a conclusion. *Braidwood v. City of Portland*, 24 Or App 477, 546 P2d 777, *rev den* (1976). In this case, there is evidence that Wilmes Sand & Gravel made a bid to the city for $12,876, which included $3,785 to remove the concrete building, $7,282 to backfill and compact 1,942 yards of fill dirt, and $1,809 to grade and compact the fill. The city gave plaintiff notice that the amount of the assessment for abatement of the nuisance was $14,831.30, which included $476 for mobilization of demolition equipment, $131 for removal of vehicles from basement, $12,876 for demolition of the remains of the building, plus a 10 percent administrative overhead. After the hearing on plaintiff's objections, the city deleted the charge

---

[5] Plaintiff also argues, under its third assignment of error, that the city failed to comply with due process in declaring the nuisance and assessing the costs of abatement. Plaintiff did not raise that issue in the writ of review proceeding, and we will not address it for the first time on appeal. ORAP 5.45.

for mobilization of demolition equipment, and assessed the remainder of the costs, $14,307.70.

Thus, there is substantial evidence in the record that the city incurred costs for removing vehicles from the basement, for removing the concrete walls, and for filling in and compacting the open pit that remained after the walls were removed. The fact that the city incurred those costs, however, does not answer whether all of those costs were related to the actual physical removal of the nuisance.

Plaintiff argues that it is responsible only for the costs of abating the nuisance as provided in the notice of declaration of nuisance. That notice said, in part:

> "The nuisance, as provided in Ordinance No. 288, Section 6, consists of a dangerous building, four concrete walls remaining from a structure destroyed by fire on July 22, 1990, said walls determined to be unstable by a professional engineer.

> "*Unless the unstable walls are removed* by the person responsible, *the City may abate the nuisance*." (Emphasis supplied.)

Plaintiff argues that the notice required only removal of the walls, which cost the city $3,785. The city responds that it is entitled to assess the cost of removing the vehicles from the open pit and of backfilling, compacting and grading to fill in that pit. It asserts first that "[t]he nuisance itself was not only the walls above ground, but also the below-ground structure, the basement, containing rusting motor vehicles and standing water, which would have become a hazardous open pit without back-filling and compacting." It also argues that "[i]t would be unreasonable to require the City, in abating the nuisance posed by the burned-out shell of an old building, to remove only the walls and thereby create a new nuisance — a hazardous open pit, filled with water and old cars, waiting for a curious child or a hapless passerby to fall into."

■     We agree with plaintiff. Even assuming, as the city argues, that plaintiff knew that the city intended to fill in the open pit if it removed the damaged walls, that does not mean that the open pit was the nuisance that the notice required plaintiff to abate. The notice provided that, "[u]nless the *unstable walls are removed* by the person responsible, the City may abate the nuisance." (Emphasis supplied.) That

notice requires removal of the walls; it cannot be read to require that plaintiff fill in the open pit created by removal of the walls as well. Further, the nuisance was declared under Section 6 of Ordinance No. 288, which provides:

"No person shall create a hazard by:

"* * * * *

"(2)   Being the owner or otherwise having possession of property upon which there is a well, cistern, cesspool excavation or other hole of a depth of four feet * * *, fail[ing] or refus[ing] to cover or fence it with a suitable protective construction, or

"* * * * *

"(4)   Failing to repair or remove any dangerous or dilapidated building, which means and includes any building or any other structure which, for the want of proper repairs or by reason of age and neglected condition or for any other cause or reason is especially liable to fire, and which building or structure is so situated or occupied as to endanger any other building or property or human life."

The ordinance distinguishes between a hazard created by a dangerous or dilapidated building or structure, and a hazard created by being in possession of property containing a hole that the owner refuses to cover or fence. Plaintiff was informed that the nuisance was the building, not the hole, and that the necessary action was removal of the unstable walls. It may be that the open pit that resulted from removal of the walls would have constituted a new nuisance. However, the city may not take steps to abate that new nuisance without following the procedures for declaring a nuisance, and giving plaintiff the opportunity to abate it. The city's assessment was excessive, because it included costs not related to the actual physical abatement of the nuisance. Thus, the trial court did not err in reversing the city's assessment and holding that the correct amount of the assessment should be $4,163.50.

Affirmed on appeal and on cross-appeal.