Submitted September 3, 2015, affirmed June 15, 2016

Jeffrey HANSEN,
Barbara Engleson, and
Oakwood Heights Special Road District,
*Petitioners-Appellants,*

*v.*

BOARD OF COMMISSIONERS
OF BENTON COUNTY,
an Oregon Municipal corporation,
*Respondent-Respondent,*

*and*

Milton B. LARSON
and Wilma E. Larson,
individually,
*Intervenors-Respondents.*

Benton County Circuit Court
1010702; A157101

377 P3d 653

Ralph O. Bloemers and Crag Law Center filed the brief for appellants.

Vance M. Croney waived appearance for respondent Board of Commissioners of Benton County.

Joel D. Kalberer waived appearance for respondents Milton B. Larson and Wilma E. Larson.

Before Lagesen, Presiding Judge, and Garrett, Judge, and DeHoog, Judge.

## DEHOOG, J.

This case involves a single parcel of land in Benton County, which the property owners sought to subdivide into nine lots in a manner prohibited by the state and county land use laws then in effect. To facilitate that subdivision, the owners sought and obtained a decision from the Benton County Board of Commissioners, in which the county concluded that the owners had a vested right, under Ballot Measure 49 (2007), to proceed with the subdivision. Petitioners challenged that decision in circuit court through the writ of review process, ORS 34.010 to 34.102. The trial court agreed with petitioners that the county had incorrectly interpreted the applicable law and that substantial evidence did not support the county's decision. Accordingly, the trial court remanded the decision to the county and instructed it to address those errors. On appeal, petitioners assert that the trial court erred in remanding, because, as a matter of law, the county could not have concluded that the property owners had a vested right to subdivide their property. Because we conclude that petitioners invited the error that they now assert, we affirm.

The historical and procedural facts in this case are undisputed. In 2007, Milton and Wilma Larson sought to subdivide their 22.4-acre Benton County property into nine lots of varying sizes. When the Larsons acquired their property in 1963, the state legislature had not yet enacted Oregon's statewide land use planning scheme, and the property was not yet subject to any zoning provisions. By 2007, however, the county had zoned the Larsons' property as "RR-5," or "Rural Residential" with a five-acre minimum lot size requirement. *See* Benton County Development Code 63.305(c) (defining "RR-5"); *see also* OAR 660-004-0040 (imposing building density limits on rural residential properties). Thus, in 2007, if the state and county land use laws then in effect were to apply to the Larsons' property, the Larsons would have been permitted to subdivide their property into, at most, four lots.

In an effort to proceed with their proposed subdivision, the Larsons applied for and obtained waivers of the otherwise applicable state and county land use laws, as

authorized by Ballot Measure 37 (2004). *See* Or Laws 2005, ch 1. Measure 37, which was approved in 2004, gave property owners an avenue to seek "just compensation" from the government when the application of land use regulations reduced the value of their property. *Former* ORS 197.352(1) (2005), *renumbered as* ORS 195.305(1) (2007). *See generally Friends of Yamhill County v. Board of Commissioners*, 278 Or App 472, 474-75, 377 P3d 670 (2016) (summarizing Measure 37 regulatory scheme). If, as happened in this case, the government did not wish to pay an owner for the reduction in value, it could, instead, exempt the property from land use laws enacted after the owner acquired the property and allow a "use" of the property that would otherwise be prohibited. *Former* ORS 197.352(8) (2005); *Friends of Yamhill County*, 278 Or App at 474. This option became known as a "Measure 37 waiver." *Friends of Yamhill County*, 278 Or App at 475. In their application for a Measure 37 waiver from the state, the Larsons described their intended "use" of the property as follows:

> "We wish to subdivide this property into 9 building sites with average area of about 2.2 acres. There is presently a 5 acre minimum zone on the property, but neighboring properties [are zoned rural residential with a two-acre minimum lot size]. When we bought, there was no zoning—a one acre lot would have been allowed. One or two of the building sites we wish to plat may turn out to be less than 2 acres in area. Our purchase in 1963 should allow plats under 2 acres under M37! Hence we ask for a one acre minimum."

In April 2007, both the state—through the Department of Land Conservation and Development (DLCD)—and the county—through the Benton County Board of Commissioners—granted the Measure 37 waivers. The DLCD order waived the application of Statewide Planning Goal 14 and its corresponding administrative rules[1] to the Larsons' "division of the 22.43-acre subject property into nine 1- to 3-acre parcels for residential development." The

---

[1] Goal 14 (Urbanization) and its corresponding administrative rules set limits on the permissible building density in rural residential areas. *See* OAR 660-015-0000(14) (Goal 14); OAR 660-004-0040 (Application of Goal 14 to Rural Residential Areas).

county's order waived the application of relevant provisions of the Benton County Development Code "to the [Larsons'] division of the subject property." Thus, the Measure 37 waivers authorized the Larsons to pursue their proposed subdivision. In June 2007, petitioner Oakwood Heights Special Road District (OHRD), an association of neighboring property owners, filed petitions in state and county courts challenging those waivers.

After the Larsons received the Measure 37 waivers, but before OHRD filed its petitions challenging those waivers, the Larsons began the subdivision application process. The Larsons began preliminary work toward the subdivision and incurred expenses for preparatory work including surveying and well drilling. In a June 2007 preapplication meeting, the county informed the Larsons that some legislative changes affecting Measure 37 might be on the horizon. That reference was to Measure 49, which the legislature had recently referred to the voters to consider later that year in the general election. Measure 49, which limited the effect of Measure 37, was passed by the voters in November 2007 and went into effect on December 6, 2007. *See* Or Laws 2007, ch 424. For landowners like the Larsons, Measure 49's immediate effect was to repeal their Measure 37 waivers and, as a result, those landowners could not continue development pursuant to those waivers. *See Friends of Yamhill County,* 278 Or App at 475. The Larsons continued to incur expenses toward the subdivision while Measure 49 was on the ballot, but ceased to incur expenses toward their proposed subdivision after Measure 49 passed. The county subsequently sent the Larsons written notice, directing them to stop work on the subdivision.

Among other provisions, Measure 49 gave landowners such as the Larsons the opportunity to seek "vested right" determinations that would enable them to continue land uses previously permitted under Measure 37. Or Laws 2007, ch 424, § 5(3). Upon obtaining a vested right determination, an owner's Measure 37 waiver would continue to be effective "to the extent that the claimant's use of the property complie[d] with the waiver and the claimant ha[d] a common law vested right on the effective date of [Measure 49] to complete and continue the use described in the waiver." *Id.*

Following the passage of Measure 49, the Larsons pursued a vested right determination by the county. The board of commissioners concluded that the Larsons had "established a vested right to subdivide the property into nine lots." In making that determination, the board applied the common law vested right test articulated by the Supreme Court in *Clackamas Co. v. Holmes*, 265 Or 193, 198-99, 508 P2d 190 (1973). That test requires the application of "four essential factors":

> "(1) the ratio of prior expenditures to the total cost of the project, (2) the good faith of the landowner in making the prior expenditures, (3) whether the expenditures have any relationship to the completed project or could apply to various other uses of the land, and (4) the nature of the project, its location and ultimate cost."

*Eklund v. Clackamas County*, 36 Or App 73, 81, 583 P2d 567 (1978), *overruled on other grounds by Forman v. Clatsop County*, 63 Or App 617, 665 P2d 365 (1983), *aff'd*, 297 Or 129, 681 P2d 786 (1984) (citing *Holmes*, 265 Or at 198-99). The board concluded that the factors, on balance, weighed in favor of a vested right. Of particular relevance here, the board found that the Larsons had made their expenditures toward the subdivision in good faith, even though they had known that, if passed, Measure 49 would affect their rights to pursue the subdivision. The board reasoned that, until the voters approved Measure 49, "there was substantial uncertainty about whether Measure 49 would become law"; because the Larsons incurred all relevant expenses before Measure 49 passed, they incurred those expenditures in good faith.

Petitioners sought a writ of review of the county's vested right determination from the Benton County Circuit Court. *See* ORS 34.040 (writ of review procedure); Or Laws 2007, ch 424, § 16(1) (providing for judicial review of vested right determinations under ORS 34.010 to 34.100); *Friends of Yamhill County*, 278 Or App at 484-85 (providing that writ of review procedure is exclusive means to obtain judicial review of vested right determination). The court allowed the writ. Upon allowing a writ of review, the reviewing court's options are to "affirm, modify, reverse or annul the decision or determination reviewed," or to "direct the inferior * * *

tribunal to proceed in the matter reviewed according to its decision." ORS 34.100; *see also Home Builders Assn. v. City of West Linn*, 204 Or App 655, 662, 131 P3d 805, *rev den*, 341 Or 80 (2006) (holding that "ORS 34.100 authorizes a reviewing court to remand to an inferior * * * tribunal and direct the inferior body to proceed according to the reviewing court's decision"). In reviewing a decision such as the vested right determination that the county made in this case, the court reviews, among other things, whether the county's decision reflects a correct interpretation of the law and whether substantial evidence supports the county's decision. ORS 34.040(1)(c) - (d); *Constant Velocity Corp. v. City of Aurora*, 136 Or App 81, 85, 901 P2d 258 (1995).

In this case, the relief that petitioners sought on review was for the trial court to "reverse the County's decision, or in the alternative, *remand the decision* for a determination consistent with the applicable law and supported by substantial evidence." (Emphasis added.) As relevant to this appeal, petitioners contended that the county had erred in determining that the Larsons had a vested right to pursue the subdivision because (1) a subdivision is, as a matter of law, not a land "use" that can vest and (2) the county had failed "to assess whether the [Larsons] could proceed in good faith while their Measure 37 waiver was subject to" legal challenge by petitioners.[2]

The trial court agreed, in part, with petitioners. In its letter opinion, the court apparently agreed with petitioners that, as a matter of law, a subdivision is not a land "use" that can vest, though, in the court's view, the Larsons were seeking the determination that they had a vested right to build homes, and not merely to subdivide their property. The court also agreed that the board's factual findings failed to support its conclusion that the Larsons had incurred expenses in good faith, because the board had failed to consider "the effect, if any, [of the Larsons'] knowledge of the pending legal challenge to their Measure 37 waivers" on that issue. In light of those conclusions, the court remanded

---

[2] In other words, petitioners argued that substantial evidence did not support the county's finding that the Larsons had incurred expenses in good faith.

the county's vested right determination for further consideration and factfinding in accordance with the court's rulings.

On appeal, petitioners do not assign error to the foregoing conclusions. Instead, they now challenge the trial court's decision to remand the vesting determination to the county, despite having requested that remand from the trial court. Petitioners argue that, "[w]hile the trial court correctly held that" a subdivision is not a "use" that can vest under the common law, "the trial court erred when it remanded to the County for further proceedings." Petitioners also argue that, "as a matter of law, the [Larsons] cannot count any expenditures as being made in objective good faith when an appeal of the land use authorizations was pending," and, therefore, the trial court erred in remanding to the county for further findings about that factual issue. In short, petitioners request that we issue an opinion holding that, as a matter of law, the Larsons do not have a vested right to pursue the subdivision of their property.

We decline to consider whether the trial court erred in remanding the vested right determination to the county, because the claim of error is unpreserved; indeed, petitioners affirmatively invited the error that they now assert. "Under the invited error doctrine, a party who 'was actively instrumental in bringing about' an alleged error 'cannot be heard to complain, and the case ought not to be reversed because of it.'" *State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) (quoting *Anderson v. Oregon Railroad Co.*, 45 Or 211, 217, 77 P 119 (1904)). The doctrine applies "when a party has invited the trial court to rule in a particular way under circumstances that suggest that the party will be bound by the ruling or will not later seek a reversal on the basis of that ruling." *Id.* "The goal of the rule is to ensure that parties who make intentional or strategic trial choices do not later 'blame the court' if those choices prove to be unwise." *Id.* (quoting *Crawford v. Jackson*, 252 Or 552, 555, 451 P2d 115 (1969)).

Petitioners expressly requested that the trial court remand the vested right decision to the county. The trial court accepted that suggestion. Moreover, the trial court remanded, in large part, because it agreed with petitioners'

substantive arguments. Under those circumstances, we decline to consider whether the trial court erred in granting petitioners relief that they had requested. *See, e.g.*, *Kammeyer*, 226 Or App at 214 (taking that approach).

Affirmed.