Argued and submitted January 19, reversed and remanded August 23, 1995

## PREMIER TECHNOLOGY,
an Illinois general partnership,
*Appellant,*

*v.*

## STATE OF OREGON,
by and through the
OREGON STATE LOTTERY,
*Respondent,*

*and*

## VIDEO LOTTERY CONSULTANTS, INC.,
*Intervenor below.*

(92C-10520; CA A83481)

901 P2d 883

John F. McGrory argued the cause for appellant. With him on the briefs were Timothy R. Volpert and Davis Wright Tremaine.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

Edmonds, J., concurring.

**WARREN, P. J.**

Plaintiff appeals a judgment dismissing plaintiff's claim for lack of subject matter jurisdiction. It assigns error to the trial court's granting of defendant's motion for summary judgment, ORCP 47, and to its denial of plaintiff's motion to compel defendant's production of certain documents, ORCP 46. We reverse.

On February 3, 1992, plaintiff and defendant executed a document entitled "Video Lottery Terminal Lease Agreement." It provides, in part:

"WHEREAS, [plaintiff] submitted a response to OSL RFP 91-07 and a video lottery game(s) manufactured by the [plaintiff] in accordance with the [defendant's] specifications for [defendant's] approval; and

"WHEREAS, [defendant] has determined that the acceptance of [plaintiff's] proposal and the entering into of this Agreement is consistent with the obligations of [defendant] to award contracts to the responsible vendor submitting the lowest and best proposal which maximizes the benefits to [defendant] in relation to cost in the areas of security, competence, experience, timely performance, and maximization of net revenues to benefit the public purposes for which the Oregon State Lottery was established; and

"WHEREAS, [defendant] and [plaintiff] now desire to enter into this Contract in order to allow expeditious and effective implementation of on-line video lottery games by March 30, 1992 (hereinafter referred to as the 'start-up date').

"NOW, THEREFORE, in consideration of the terms and conditions contained herein, [defendant] and [plaintiff] agree as follows:

"* * * * *

"3.0  *TERM OF AGREEMENT*

"3.1  This Agreement shall commence on the date it is fully executed by the parties, and it shall continue for five consecutive one-year periods from the start-up date, with an option to terminate at the end of each such year. Notwithstanding the date of execution, this Agreement shall not become effective until the performance bond required in paragraph 4.4 has been posted by the [plaintiff].

"3.2   If, at the time of execution of this Agreement by the parties, the security investigation conducted by the [defendant] has not been completed, the following conditions apply to this Agreement:

"a.   This Agreement is not binding upon the parties until the security investigation demonstrates the absence of prohibited criminal activity;

"b.   [Plaintiff] shall comply with the implementation schedule and assume all risk that it will not pass the security check with regard to criminal activity;

"c.   If [plaintiff] fails to pass the security investigation, [plaintiff] shall remove its terminals at no cost to [defendant] and receive no compensation from [defendant] for its prior compliance with the implementation schedule.

"d.   If [plaintiff] passes the security investigation, this Agreement shall become binding upon the parties and shall be given retroactive effect.

"* * * * *

"8.1   If the guaranteed initial order of terminals or any portion thereof is not delivered by February 14, 1992, [plaintiff] shall, at [defendant's] option, either pay for [or] assist in the delivery and installation of the terminals to retailer locations designated by [defendant]. Terminals comprising the guaranteed initial order that are not delivered by February 14, 1992, must be delivered and installed by March 13, 1992. If such terminals are not delivered and installed by March 13, 1992, [plaintiff] shall pay to [defendant], as fixed and agreed liquidated damages, for each calendar day's delay, beginning on the next day, but not for more than 60 days, $50 per terminal per day.

"* * * * *

"27.1   *Termination by [defendant] for Cause or Other Reasons*

"[Defendant] reserves the right to terminate this Agreement or any individual games or terminals effective upon delivery of written notice to [plaintiff] pursuant to paragraph 28 upon the occurrence of any of the following:

"* * * * *

"c.   If [defendant] determines satisfactory performance of the Agreement is substantially endangered or can reasonably anticipate such an occurrence of default.

"* * * * *

"e. If [plaintiff] jeopardizes the integrity, security, honesty, or fairness of the Lottery.

"* * * * *

"Any such termination of this contract shall be without prejudice to any obligations or liabilities of either party already accrued prior to such termination."

On February 11, 1992, defendant sent plaintiff a letter, which said, in part:

"This is written notice that [defendant] is hereby terminating its conditional contract with [plaintiff], effective immediately, pursuant to Paragraph 27.1(e) of the Agreement. For the reasons described below, [defendant] has concluded that continuation of the contract jeopardizes the integrity, security, honesty or fairness of the Lottery.

"We note first that the contract was conditional upon the completion of a security investigation. Par. 3.2. Although that investigation has not been completed, [defendant] has determined that even if [plaintiff] could satisfy paragraph 3.2 of the Agreement (no prohibited criminal activity), [defendant] has sufficient grounds for termination under Paragraph 27.1(e). Under these circumstances, there is no reason to continue a security investigation as a condition precedent to the contract. Solely for purposes of the termination, [defendant] deems the conditional contract binding.

"The security investigation has established that the failure of [plaintiff] to provide adequate security at [plaintiff's] plant is a threat to the honesty, security and integrity of the Lottery."

Plaintiff then brought this action in circuit court alleging that the February 3 document was an enforceable agreement, and that defendant's termination of the agreement before it had completed the security investigation breached the agreement in violation of defendant's implied duty of good faith and fair dealing. Plaintiff also alleged that defendant breached the agreement by terminating the agreement without cause, by unilaterally imposing additional terms regarding the security of plaintiff's facilities, and by applying a different standard to plaintiff than it did to the other companies awarded similar contracts by defendant. It made claims for breach of contract, declaratory judgment and injunction.

Before trial, defendant moved for summary judgment, arguing that its letter terminating the agreement was an administrative "order in other than a contested case," and that, because plaintiff had failed to file a timely petition for review under the Administrative Procedures Act, the circuit court did not have subject matter jurisdiction. ORS 183.310-(5)(a); ORS 183.484. Plaintiff countered that the APA was not implicated, because its claim was for breach of contract based on defendant's conduct in terminating the contract. Defendant responded with two arguments: (1) The February 3 document shows on its face that there was no binding contract between the parties until the security investigation was completed, and therefore, the action could not be for breach of contract; (2) even if a contract had been formed, the APA applies because the February 11 letter was an "order" that is reviewable exclusively under the APA.[1] The trial court agreed with defendant that it had no jurisdiction because plaintiff's claim was subject to the APA.

On appeal, plaintiff argues that its claim is for damages for breach of contract, to which the APA does not apply. Defendant responds, as it did in the trial court, with the argument that the February 3 document, on its face, shows that there was no binding agreement between the parties and, therefore, this claim cannot be for breach of contract. It argues that the letter purportedly terminating the agreement was an order in other than a contested case, reviewable only under the APA.

■    We agree with plaintiff that the claim it is asserting is one for breach of contract, and that the trial court erred in holding that it did not have jurisdiction over the action. Plaintiff's complaint alleges that it entered into an agreement with defendant, that defendant breached that agreement, and that plaintiff suffered damages as a result of the breach. That pleading states a claim for breach of contract. Defendant asserts that the pleading, including the incorporated document, shows that there was never an agreement between the

---

[1] Defendant does not direct any of its jurisdiction arguments to plaintiff's declaratory judgment or injunction claims. Because the summary judgment was granted as to the entire complaint, we will assume that our decision regarding jurisdiction over the contract claim will also apply to the declaratory judgment and injunction claims.

parties that could have been breached. Defendant then reasons that, if there was no agreement, plaintiff could not be making a claim for breach of the agreement.

The essence of the claim that plaintiff is asserting is breach of an existing contract. Any assertion that the written document defeats the allegation of a binding agreement goes to the merits of the contract claim, not to whether the cause of action that is being asserted is for breach of contract. If the document shows on its face that any agreement between the parties was subject to a condition precedent and the pleading alleges that that condition never occurred, defendant has a complete defense to the contract action.[2] The fact that a contract claim may be subject to a complete defense does not make the *claim* any less one for breach of contract, nor does it turn the claim into something else, for example, an attempt to obtain judicial review under the APA.

Defendant asserts that the conduct of which plaintiff complains occurred before the formation of the contract, not after the agreement had become binding. Thus, defendant argues, this case is like *Pen-Nor, Inc. v. Oregon Dept. Higher Ed.*, 87 Or App 305, 742 P2d 643 (1987), and *Clarke Electric, Inc. v. State Highway Division*, 93 Or App 693, 763 P2d 1199 (1988), in which we held that review of the agency action was exclusively under the APA. In *Pen-Nor*, the plaintiff sued after it was not awarded a bid on a construction project at Portland State University. The plaintiff sought remedies under the APA and also brought an action for declaratory judgment against the agency awarding the bids. The plaintiff's main argument was that the agency had incorrectly interpreted a statute governing how the state may award

---

[2] The pleading might also be subject to a motion to dismiss for failure to state a claim, as we will discuss below. 136 Or App at 132.

The concurrence asserts that we should decide whether summary judgment should have been granted on the merits, *i.e.*, whether there is a question of fact about the existence of a contract. Defendant did not seek summary judgment on that basis; it sought summary judgment based on its argument that the court lacked jurisdiction, because the claim must be brought as a petition for judicial review under the APA. The concurrence acknowledges that we correctly decide that issue. That resolves the only question that is properly before us. Although defendant does argue that the evidence shows that there was no contract, it did not assert that as an alternative basis for summary judgment. As we have explained, whether there was in fact a contract goes to the merits and has nothing whatever to do with the only issue raised in the summary judgment motion, jurisdiction.

bids. We held that the plaintiff had an adequate remedy under the APA and that, "If [a] plaintiff has a remedy under the APA, it is precluded from obtaining declaratory judgment." 87 Or App at 308. (Citation omitted.)

In *Clarke Electric*, the plaintiff brought claims against the state on theories of negligence, negligence *per se* and statutory tort, asserting that the state had failed to follow the mandates of a statute when it rejected the plaintiff's bid on a contract. Although the plaintiff had submitted the lowest bid, the agency rejected it and entered into a contract with another contractor. We held that the APA was the exclusive method by which to obtain review the agency's rejection of the plaintiff's bid.

Those cases are distinguishable. In both cases, the claims were based on the alleged fact that each plaintiff had bid on a contract and had the bid rejected. In neither case did the plaintiff allege or argue that there was a binding contract between it and the agency that was breached. Contrary to defendant's argument in this case, that is a critical distinction. The plaintiffs in those cases were challenging the agency action that precluded the creation of a contract. A breach of contract remedy would not have been available to those plaintiffs on the alleged facts. In contrast here, plaintiff claims that there was a binding contract between the parties that was breached. If it prevails in proving that, it is entitled to a contract remedy for any breach.

Defendant argues that, even if there was an existing contract between the parties, the APA applies nonetheless, because the termination of the agreement was communicated by letter. According to defendant, the February 11 letter was an order in other than a contested case, ORS 183.310(5), which is reviewable exclusively under the APA. *See* ORS 183.480. Plaintiff counters that the letter is not an order and that, even if it is an order, the APA does not apply, because it is not seeking review of that letter for compliance with administrative law, but is relying on that letter only to show defendant's breach.

Again, we agree with plaintiff. The sole avenue for review of the validity of final agency orders is through the APA. ORS 183.480(2). Even if the letter is an order in other

than a contested case, however, plaintiff is not precluded from pursuing a breach of contract action against an agency that allegedly used the order to breach the agreement. Plaintiff's claim does not challenge the validity of the order; it claims that the order communicated the fact of the breach of the terms of the contract. Thus, it is not seeking judicial review of the agency action for compliance with administrative law, but instead is seeking a remedy for the consequences caused by the order, *i.e.*, it allegedly constituted a breach of the contract. The question of whether an agency's action is in violation of the terms of an agreement the agency has made with another party is not a question of administrative law; it is a classic question of contract law.

An agency can breach a contract in various ways. It may breach by its conduct in failing to pay or to perform. Or it may communicate a breach through a letter that constitutes an administrative order. When an agency uses the administrative process to violate an agreement, the other party may seek to invalidate the agency action that constituted the breach, on the basis that the action did not comport with administrative law. In such a case, APA review would be exclusive as to the validity of the agency action. Here, plaintiff is not claiming that the agency action violated a statute or rule or was otherwise in violation of administrative law.[3] Instead, it is claiming that the action constituted a breach of the agency's agreement. Thus, plaintiff's claim does not fall under the APA any more than it would have had defendant's alleged breach occurred through conduct rather than through issuance of an order.

■       Finally, defendant argues that the trial court's dismissal can be affirmed on the alternative ground that plaintiff's complaint fails to state a claim. ORCP 21 A(8). It correctly asserts that failure to state a claim may be raised at any time, even for the first time on appeal. *Isler v. Shuck*, 38 Or App 233, 589 P2d 1180 (1979). Defendant relies on the proposition that the complaint, by its incorporation of the February 3 document, establishes that there was no contract

---

[3] Defendant argues that entering into this contract with plaintiff would have exceeded its authority. That question, if properly raised, may be a matter for defense. It does not, however, relate to the issue before us, *i.e.*, the trial court's jurisdiction to decide the claim.

between the parties, because the document shows that the contract was conditioned on the completion of the security investigation, which never occurred. Therefore, it asserts that plaintiff has failed to plead an essential element of a claim for breach of contract.

■  Even assuming that we could affirm on the merits after the trial court dismissed for lack of jurisdiction, defendant's argument fails. In determining whether a complaint states a claim, we consider as true all the allegations in the complaint and all reasonable inferences that may be drawn from them. *Glubka v. Long*, 115 Or App 236, 837 P2d 553 (1992). Here, paragraph 3.2 of the agreement provides that it "is not binding upon the parties until the security investigation demonstrates the absence of prohibited criminal activity." Plaintiff's complaint alleges that defendant terminated the agreement "prior to completion of [defendant's] security investigation." The terms of the agreement also suggest, however, that the agreement could be binding during the time that the investigation is being conducted, and that an unsuccessful security investigation would merely excuse further performance by defendant. For example, the document required plaintiff to deliver equipment by a date certain, apparently without regard to whether the security investigation had been completed, and provided that, after the security investigation was completed, the agreement would be binding and have retroactive effect. Giving plaintiff the benefit of the inferences that arise from the document, the security investigation condition may be read as a condition subsequent that excuses performance of an existing agreement rather than one that precludes formation of the contract.[4] The complaint therefore states a claim for breach of contract.

■  Plaintiff also assigns as error the trial court's order denying its motion under ORCP 46 A to compel defendant's production of documents regarding the scope, methods, or

---

[4] Any factual questions about whether the condition was a condition precedent or a condition subsequent are left for a determination on the merits. Thus, evidence submitted with the summary judgment motion regarding whether the parties considered the agreement to be binding pending the outcome of the security investigation does not affect our determination of whether the complaint states a claim for relief. As we have said, above at note 2, defendant does not argue that it is entitled to summary judgment on the contract claim because there are no questions of fact on the merits.

findings of the security investigation of other video lottery terminal manufacturers that were awarded contracts with defendant. *See* ORCP 43. Defendant objected to the request on the grounds that the information is not relevant to plaintiff's claims, as stated in the pleadings, and that the material is exempt from disclosure under the Public Records Act, ORS 192.410 *et seq.* The court denied the motion to compel.

ORCP 36 B provides that, unless otherwise limited by the court, a party "may inquire regarding any matter, not privileged, which is relevant to the claim or defense of the party seeking discovery * * *." The court has the authority to deny discovery, if justice requires, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense * * *." ORCP 36 C.

We review for abuse of discretion, *Farmers Ins. v. Hansen*, 46 Or App 377, 611 P2d 696 (1980), and conclude that the trial court did not abuse its discretion in denying the motion to compel. Even assuming that the information sought was relevant to plaintiff's claim, the information was exempt from disclosure under the public records law, and its disclosure in this litigation would cause harm to plaintiff's competitors, about which the information was sought.

Public bodies are required to allow inspection of public records "except as otherwise expressly provided by ORS 192.501 to 192.505." ORS 192.420. ORS 192.502(3) provides that "[t]he following public records are exempt from disclosure under ORS 192.410 to 192.505":

> "Information submitted to a public body in confidence and not otherwise required by law to be submitted, where such information should reasonably be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure[.]"

We agree with defendant that the information plaintiff seeks meets the requirements of that statute. It was submitted voluntarily and in confidence. The agency obligated itself in good faith not to disclose the information. The information was of the type that would reasonably be considered confidential. Some of the documents requested for the

security investigation of other video lottery terminal manufacturers included bank account numbers, tax returns, and other personal information of the manufacturers. The public interest would suffer by the disclosure, because it could discourage video lottery terminal distributors from applying for contracts with defendant, thereby reducing competition for video lottery terminals.

The fact that the information is exempt from disclosure under the Public Records Act does not necessarily mean, however, that it is privileged and therefore not discoverable under ORCP 36 B. In *Portland Adventist Medical Center v. Sheffield*, 303 Or 197, 199 n 2, 735 P2d 371 (1987), the Supreme Court noted:

> "[T]he fact that information is exempt from obligatory disclosure under the Public Records Act does not resolve the question of the authority of a public official to disclose the information voluntarily. An exemption from the Public Records Act means that the custodian of the information is not *obligated* to disclose it. Exemption from disclosure does not necessarily mean that the custodian is required *not* to disclose it." (Emphasis in original.)

On the other hand, OEC 509 provides that a public official cannot be examined regarding records that are exempt from disclosure under the Public Records Act. We need not decide in this case whether information contained in exempt public records is privileged, however, because we conclude that, even if the information was not privileged, the trial court did not abuse its discretion in denying the motion to compel. The court may deny a motion to compel when justice requires. ORCP 36 C. Because disclosure of the information relating to security investigations of plaintiff's competitors would discourage competition among video lottery terminal distributors, and because of the possibility that sensitive information would be disclosed to the public, we conclude that the disclosure could harm the public interest. Therefore, it was within the trial court's discretion to deny the motion to compel.[5]

Reversed and remanded.

---

[5] Plaintiff did not ask the court to compel production of some of the information if some but not all of the information was subject to disclosure.

**EDMONDS J.,** concurring.

Although I agree with the majority's result, I write separately to respond more fully to defendant's argument. This matter came before the trial court on the motion of the state of Oregon on behalf of the Oregon State Lottery for summary judgment pursuant to ORCP 47 C. The state argued in support of its motion and argues to us that because it issued on February 11, 1992, an administrative order terminating its obligations under the parties' lease agreement, plaintiff's recourse is only under the other than a contested case procedure of the Administrative Procedures Act (APA), ORS 183.484. In support of that argument, one of the propositions argued by the state to the trial court and to us is that no contractual relationship ever existed between the parties. The trial court allowed the motion, characterizing the issue as whether it was without "subject matter jurisdiction because plaintiff [had] failed to file a petition for APA review within the time required by law."

The jurisdiction of the trial court was invoked by plaintiff's complaint alleging a claim for breach of contract against the agency. Once properly invoked, subject matter jurisdiction does not depend on the existence of a sustainable claim or by the evidence subsequently adduced. *Dippold v. Cathlamet Timber Co.*, 98 Or 183, 192, 193 P 909 (1920). Plaintiff's right to sue defendant is found in ORS 30.320.[1] That statute provides a waiver of the state's sovereign immunity and a statutory remedy for breaches of contracts by state agencies made within the scope of their authority. *See Harsh Investment Corp. v. State Housing Division*, 88 Or App 151, 155, 744 P2d 588 (1987). When the trial court ruled that it was deprived of subject matter jurisdiction because it viewed plaintiff's claim as being subject to the APA, it erred.

However, that error is harmless if the agency is entitled to summary judgment on the record before the trial court. The state asserts that it did not enter into a contractual relationship with plaintiff, and therefore, plaintiff has no

---

[1] ORS 30.320 provides:

"A suit or action may be maintained against * * * the State of Oregon by and through and in the name of the appropriate state agency upon a contract made by * * * such agency and within the scope of its authority * * *."

right to sue it under ORS 30.320. It argues that the exhibits that it introduced into the summary judgment record demonstrate that plaintiff's claim is not based on a contractual relationship, because the existence of the lease agreement was subject to a condition precedent that never occurred. Therefore, it follows that in the absence of any contractual relationship between the parties, the trial court properly entered judgment dismissing plaintiff's claim, assuming that plaintiff also failed to file a petition under the APA as required by law. I understand the majority to hold that all plaintiff had to do to defeat the agency's summary judgment motion was to allege a claim in contract. I disagree. Plaintiff's right to sue is contingent on the existence of a contractual relationship, and the agency challenges that right through the summary judgment procedure. Because the issue is framed pursuant to ORCP 47, the proper inquiry is whether there is any genuine issue as to a material fact and whether defendant is entitled to judgment as a matter of law. That inquiry requires the focus to be on the summary judgment evidentiary record rather than on plaintiff's allegations in its complaint. Specifically, is the existence of the lease agreement subject to a condition precedent, *i.e.*, the completion of a security investigation favorable to plaintiff, or is that condition a condition subsequent that discharges the future obligations of the parties to perform after performance of the agreement has begun?

The motion before the trial court was supported by the submission of four exhibits including the document entitled "Video Lottery Terminal Lease Agreement." That agreement provides, in part:

"3.0 *TERM OF AGREEMENT*

"3.1 This Agreement shall commence on the date it is fully executed by the parties, and it shall continue for five consecutive one-year periods from the start-up date, with an option to terminate at the end of each such year. Notwithstanding the date of execution, this Agreement shall not become effective until the performance bond required in paragraph 4.4 has been posted by the Contractor.

"3.2 If, at the time of execution of this Agreement by the parties, the security investigation conducted by the Lottery has not been completed, the following conditions apply to this Agreement:

"a.   This Agreement is not binding upon the parties until the security investigation demonstrates the absence of prohibited criminal activity;

"b.   Contractor shall comply with the implementation schedule and assume all risk that it will not pass the security check with regard to criminal activity;

"c.   If Contractor fails to pass the security investigation, Contractor shall remove its terminals at no cost to the Lottery and receive no compensation from the Lottery for its prior compliance with the implementation schedule.

"d.   If Contractor passes the security investigation, this Agreement shall become binding upon the parties and shall be given retroactive effect."

Also included in the record is the letter of February 11, 1992, in which the agency repudiated the lease agreement.[2]

Contrary to the agency's argument, the terms of the lease agreement create a genuine issue of material fact about whether the parties intended that a completed security investigation be a condition precedent to the existence of the agreement or a condition subsequent that could discharge the obligations of the parties under the contract after performance had begun. According to the agreement, the agreement commences on the date of execution. In paragraph 3.1, the agreement clearly establishes a condition precedent regarding the requirement of a performance bond. In contrast, the purported requirement of a security investigation before the agreement becomes effective is not clear. Paragraph 3.2 contemplates performance by plaintiff before the security investigation is completed and says that if plaintiff passes the investigation, the agreement shall be given "retroactive" effect.

---

[2] The letter stated, in part,

"This is written notice that the state is hereby terminating its conditional contract with [plaintiff], effective immediately, pursuant to 27.1(e) of the agreement."

Paragraph 27.1(e) of the lease provides that if plaintiff "jeopardizes the integrity, security, honesty, or fairness of the Lottery," the agency may terminate the "contract" without "prejudice to any obligations or liabilities of either party already accrued prior to such termination."

In the light of those terms, one reasonable interpretation of the agreement and the intentions of the parties is that plaintiff could be held in breach of the lease agreement before the security investigation was complete. Therefore, plaintiff has an enforceable obligation to begin the manufacture of the equipment without awaiting the completion of the investigation. In a reciprocal sense, the state could be liable for a breach if the contract was in existence on February 11.

When a contract is subject to differing plausible interpretations, and extrinsic evidence about the parties' intent is controverted, summary judgment is precluded. *Jones v. Jaquith*, 44 Or App 727, 731, 606 P2d 1179 (1980). It follows that the state's argument that the APA governs plaintiff's claim exclusively is wrong.

My quarrel with the majority's reasoning is that it does not go far enough.[3] It is correct when it holds that plaintiff has pleaded a claim based on contract, and that the agency cannot defeat plaintiff's claim for breach of contract under ORS 30.320 by the mere issuance of an administrative order repudiating its contractual obligations. However, plaintiff's pleading does not preclude a successful summary judgment motion by the agency demonstrating that, *in fact*, there was no contractual relationship created because a condition precedent to that relationship never occurred. For this reason, I concur in the majority's result, but not with its reasoning.

---

[3] The majority opinion states, in part,

"We agree with plaintiff that the claim it is asserting is one for breach of contract, and that the trial court erred in holding that it did not have jurisdiction over the action. Plaintiff's complaint alleges that it entered into an agreement with defendant, that defendant breached that agreement, and that plaintiff suffered damages as a result of the breach. That pleading states a claim for breach of contract. * * *

"The essence of the claim that plaintiff is asserting is breach of an existing contract. Any assertion that the written document defeats the allegation of a binding agreement goes to the merits of the contract claim, not to whether the cause of the action that is being asserted is for breach of contract. If the document shows on its face that any agreement between the parties was subject to a contract precedent and the pleading alleges that that condition never occurred, defendant has a complete defense to the contract action. The fact that a contract claim may be subject to a complete defense does not make the *claim* any less one for breach of contract * * *." 136 Or App at 129-30. (*Emphasis* in original; footnote omitted.)