Argued and submitted May 18, 2010, dismissal of breach-of-contract, due process, equal treatment, and section 1983 claims reversed and remanded; otherwise affirmed August 10, 2011

James C. WALLACE,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON ex rel
Public Employees Retirement Board
and Public Employees Retirement System;
Public Employees Retirement Board;
Paul R. Cleary,
individually;
and Gay Lynn Bath,
individually,
*Defendants-Respondents.*

Marion County Circuit Court
08C10873; A141065

263 P3d 1020

James C. Wallace argued the cause and filed the briefs *pro se*.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondents. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Plaintiff appeals a judgment that dismissed his claims against defendant, raising three assignments of error.[1] We write to address only one of his assignments, *viz.*, that the trial court erred in dismissing six of plaintiff's seven claims for relief for lack of jurisdiction. The court concluded that it lacked subject matter jurisdiction over those claims because plaintiff had begun but not completed a contested case proceeding under the Oregon Administrative Procedures Act (APA), ORS 183.310 to 183.690, that challenged the legality of the state agency actions that formed the basis of plaintiff's claims, and, hence, plaintiff had not exhausted his administrative remedies regarding the challenged agency actions. We review the dismissal of an action on jurisdictional grounds for legal error, *Parker v. City of Albany*, 208 Or App 296, 298, 144 P3d 976 (2006), and conclude that the court erred in dismissing the claims on which plaintiff requested compensatory relief. Accordingly, we reverse and remand as to those claims.

## I. BACKGROUND

We state the facts as alleged in plaintiff's complaint, accepting as true his well-pleaded allegations with the benefit of all favorable factual inferences. *Sulliger v. Lane County*, 190 Or App 359, 361, 79 P3d 888 (2003). Plaintiff had been a participant for about 15 years in the Oregon Savings Growth Plan (Plan), a deferred-compensation plan for state employees under the Public Employees Retirement System (PERS) that is administered by the Public Employees Retirement Board (PERB), ORS 243.470. During that time, defendant restricted plaintiff's ability to transfer funds among various investment options in the Plan and imposed sanctions against plaintiff when he violated those restrictions.

In 2002, PERB adopted a policy under which Plan participants who made more than an average of two transfers,

---

[1] As discussed below, plaintiff brought this action against the State of Oregon, the Public Employees Retirement Board, and, individually, Paul R. Cleary and Gay Lynn Bath under various theories of recovery. Because plaintiff does not request relief against Cleary or Bath individually in the six claims addressed in our decision, we refer to all of the defendants, collectively and individually, as "defendant" throughout this opinion.

including purchases or redemptions, per month into or from the International Stock investment option (IS option) in a three-month period would be "flagged." Once flagged, PERS would not process more than one redemption request per month by the flagged participant in the IS option. In March 2002, plaintiff received a letter indicating that, because one of the investment funds in the IS option had determined that the frequency of plaintiff's trading activity had been detrimental to the fund's performance, plaintiff could not make more than one redemption per month from the IS option.

In 2004, PERS adopted a policy that delegated authority to the manager of the Plan to implement reasonable restrictions on trading activity by Plan participants; the basis of the policy was that excessive trading by Plan participants increased administrative expenses and adversely affected the performance of Plan investment funds. Pursuant to that policy, the Plan manager further restricted plaintiff's trading activities in 2005, prohibiting him from transferring more than $100,000 into or from the IS option—a violation of which would result in a prohibition against making any transfers involving the IS option. Despite the 2005 restriction, plaintiff transferred over $200,000 in 2006 from the IS option into another investment option. As a result of that transfer, the Plan manager instituted further restrictions on plaintiff's account in 2006, including a prohibition against transferring funds by telephone or the Internet.

Shortly thereafter, the Plan manager revised the 2006 restrictions, which ultimately resulted in restrictions on the frequency and monetary amount of plaintiff's trading in all of the investment options in the Plan. Plaintiff challenged the revised restrictions, and PERS issued a determination letter that concluded that the revised restrictions had been properly imposed and that plaintiff's excessive trading activity justified their imposition. Plaintiff requested a contested case hearing on the restrictions, which PERS granted.

In May 2007, to deter Plan participants generally from engaging in frequent trading, PERS adopted OAR 459-050-0037 (2008), which provided for a number of restrictions on trading activity by Plan participants. Importantly for this case, the rule provided:

"(1)  Definitions. For the purposes of this rule:

"* * * * *

"(b)  'Trade' means a purchase or redemption in an investment option for the purpose of moving monies between investment options.

"(2)  Restrictions. The following restrictions apply to all participants:

"(a)  A participant may not make a trade that exceeds $100,000.

"(b)  A purchase that is attributable to a trade may not be redeemed from the investment option in which the purchase was made for a period of 90 days following the date of the trade.

"* * * * *

"(3)  The Deferred Compensation Manager, if necessary to comply with trading restrictions imposed by a participating mutual fund * * *, may establish additional temporary trading restrictions."

As a result of the adoption of OAR 459-050-0037 (2008), the administrative law judge (ALJ) in plaintiff's contested case proceeding issued a proposed order that granted a motion by PERS for summary determination and that dismissed plaintiff's request for a hearing, concluding that the rule rendered moot plaintiff's challenges to the unique, individualized trading restrictions that had been placed on plaintiff's account between 2002 and 2008. PERB subsequently entered a final order that was consistent with the ALJ's proposed order.[2] Plaintiff sought judicial review in this court of PERB's final order, and that review is pending. *Wallace v. State ex rel PERS* (A144617).

Before PERB issued its final order in the contested case proceeding, plaintiff filed the present action in circuit court based on the trading restrictions that PERS had placed

---

[2] PERB also concluded that PERS was entitled to summary determination, in part, because plaintiff could not recover in a contested case proceeding under the APA the monetary damages that he sought as a result of the trading restrictions that had been imposed on him.

on his account, asserting seven claims against defendant—of which six are pertinent to this appeal.

In plaintiff's first claim (the lack-of-authority claim), he alleged that the trading restrictions imposed by the 2002 and 2004 PERS policies had not been lawfully imposed and that the Plan manager lacked authority under the appropriate statutes and rules to impose sanctions against plaintiff. The claim sought declaratory relief, *viz.*, declarations that the trading restrictions were unlawful and invalid.

In plaintiff's second claim (the breach-of-contract claim), he asserted that the statutory provisions and rules governing the Plan, along with a written agreement between plaintiff and defendant pertaining to his participation in the Plan, provide the terms and conditions of a contract between plaintiff and defendant that was breached by the trading restrictions that defendant had placed on plaintiff's account. For his breach-of-contract claim, he sought declaratory relief establishing the contract and its breach, injunctive relief, and compensatory damages for the breach.

In his third claim (the due process claim), plaintiff asserted that he was not provided a hearing to contest any of the trading restrictions that had been imposed on his account and that the denial of such a hearing had violated his right to due process as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. For his due process claim, he sought declaratory relief—*viz.*, declarations that his rights to due process had been violated—and compensatory relief for the violation.

In his fourth claim (the contract-impairment claim), he asserted that the restrictions imposed by the 2002 and 2004 PERS policies and OAR 459-050-0037 (2008) impaired defendant's contractual obligations to plaintiff in violation of Article I, section 21, of the Oregon Constitution and Article I, section 10, of the United States Constitution. For that claim, plaintiff sought declaratory relief—*viz.*, the same declarations requested under the breach-of-contract claim and declarations establishing that the policies and rule had violated his constitutional rights and, therefore, were void.

In his fifth claim (the equal treatment claim), plaintiff alleged that (1) the trading standards established by the 2004 PERB policy were unconstitutionally vague under the Due Process Clause; (2) the 2005 restriction, the 2006 restrictions, and OAR 459-050-0037 (2008) violated his rights to substantive due process as guaranteed by the Due Process Clause; (3) the delegation of discretionary authority by PERB to the Plan manager through the 2004 PERB policy and OAR 459-050-0037 (2008) violated the separation of powers provision of the Oregon Constitution; and (4) the application of the 2004 PERB policy, the 2005 restriction, and the 2006 restrictions was arbitrary and disparate among participants in the Plan and, therefore, violated Article I, section 20, of the Oregon Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. For his equal treatment claim, plaintiff sought declaratory relief—*viz.*, declarations establishing that the trading restrictions identified in the claim violated his constitutional rights and, therefore, were void—and compensatory relief for the violation.

In plaintiff's sixth claim (the section 1983 claim)—the final claim at issue in this case—he asserted that the constitutional violations that he had alleged in his other claims entitled him to declaratory and compensatory relief under 42 USC section 1983.

Defendant moved under ORCP 21 A(1) to dismiss plaintiff's claims for lack of subject matter jurisdiction and under ORCP 21 A(8) to dismiss them for failure to state ultimate facts sufficient to constitute a claim. In support of its subject matter jurisdiction contention, defendant argued, in part, that

"the state [APA] provides the exclusive remedy for challenging defendant's actions regarding any alleged violation of any law, constitutional protection, or fiduciary duty, * * * [plaintiff] should have raised his claims regarding any alleged breach of any law, constitutional protection, or fiduciary duty during the contested case process, * * * [and] plaintiff is barred from challenging the 2002 and 2005

restrictions because he did not exhaust his administrative remedies[.]"[3]

Plaintiff responded, in essence, that a contested case proceeding is not the exclusive forum to challenge the legality of the trading restrictions imposed on his Plan account but, rather, that PERS and the trial court have concurrent jurisdiction over those aspects of his claims. Further, he contended that the considerations delineated in *Boise Cascade Corp. v. Board of Forestry (S42159)*, 325 Or 185, 935 P2d 411 (1997), do not militate in favor of the court invoking the doctrine of primary jurisdiction and abating the court action until PERS had addressed the issues within PERS's primary jurisdiction.

At the hearing on defendant's motion, defendant reiterated that plaintiff

"raises a variety of claims, and * * * almost all of them say that there was some statutory violation, there was a constitutional violation, there was some sort of violation of an agency policy. The agency did something wrong during the administrative process. Every one of those claims and every one of those issues is subject to review under the [APA]. It is what [plaintiff] could raise during his contested case process and it is what he can appeal to the Oregon Court of Appeals. * * * So to the extent that [plaintiff] is arguing any claim of any violation of the statute or a rule or a policy, [there is] APA exclusivity and he should have raised it during the * * * APA process and he cannot raise it here."

Plaintiff responded that

"the strongest argument [defendant] made pertains to the fact that I separated—I created a claim one[—the lack-of-authority claim—]that just addressed the rule and the statute, and I think in the complaint I just asked for declaratory relief [on that claim]. * * * [Defendant] ha[s] a much stronger argument that the agency has exclusive jurisdiction over that. * * * [But claim one] underlies, as I said, the [other claims], and so * * * notwithstanding the fact that maybe the Circuit Court did not have jurisdiction just to

_____

[3] Defendant also contended that plaintiff had failed to exhaust his administrative remedies as to the 2002 and 2005 trading restrictions because he did not seek administrative review of the restrictions within the 60-day time limit imposed by OAR 459-001-0030.

determine whether or not a statute or a rule is valid because it underlies another claim, * * * the Court has to decide that."

After the hearing, the court issued a letter opinion, concluding that all of the claims

"are barred as Plaintiff failed to exhaust his administrative remedies. The APA 'establishes a comprehensive pattern for the judicial review of administrative decisions. The various APA statutes governing judicial review provide the sole and exclusive methods of obtaining judicial review.' *Eppler v. Bd. of Tax Service Examiners*, 189 Or App 216, 219, 75 P3d 900 (2003) (internal citations omitted). * * *

"The doctrine of exhaustion applies when a party, without conforming to the applicable statutes or rules, seeks judicial determination of a matter that was or should have been submitted to the administrative agency for decision.

"In this case, Plaintiff was provided a contested case hearing wherein he had the ability to challenge the [trading] restrictions. Plaintiff admits that, '[e]xcept for the tort claims, Plaintiff's claims in these proceedings are identical [to] those he made before PERS[.]' Having begun the administrative process with a request for an administrative hearing, and regardless of the outcome of that hearing, review of the agency's ruling would have been by petition for judicial review in the Court of Appeals under the APA. However, Plaintiff chose to bring his action in a new forum. That decision is inconsistent with the [principle] of exhaustion. This demonstrates that Plaintiff did not exhaust his administrative remedies."

(Internal citations omitted; second and fourth alterations in original.) Therefore, the court determined that it lacked subject matter jurisdiction over plaintiff's six claims.[4] Based on

---

[4] In the letter opinion, the court acknowledges that, "[a]lthough [the parties] will note below that [the court's] decision [on] several of the [claims] is based upon procedural grounds, [the court] still analyzed the merits of those claims before making [its] decision." But, because the court did not expressly address whether the six claims for which it concluded that it lacked subject matter jurisdiction also failed to state ultimate facts sufficient to constitute such a claim, we are unable to discern whether the purported failure to state ultimate facts was determined by the court to be an independently sufficient ground on which to dismiss plaintiff's claims. Further, other than the section 1983 claim, which is addressed below, defendant did not argue on appeal that we should affirm the court's dismissal on the alternative basis that none of plaintiff's claims alleged facts sufficient to state

its reasoning in the letter opinion, the court dismissed plaintiff's complaint with prejudice.

## II. ANALYSIS

On appeal, plaintiff argues, among other things, that the court and PERS have concurrent jurisdiction over the claims on which plaintiff sought compensatory relief because he cannot obtain compensatory relief through the APA contested case proceeding. As to his lack-of-authority and contract-impairment claims—in which plaintiff requested only declaratory relief—he contends that the court and PERS also have concurrent jurisdiction over those claims because they are incidental to the claims for which he requested compensatory relief. Further, plaintiff argues that, if PERS has primary jurisdiction over any of the issues raised in any of the claims subject to concurrent jurisdiction, then the court should have abated the action, rather than dismissing it with prejudice, pending the resolution of his contested case proceeding.

In response, defendant argues, as it did before the trial court, that, until plaintiff establishes through the contested case proceeding the invalidity of the trading restrictions at issue in this case, the court lacks authority to address his claims, regardless of the type of relief that he requested. Defendant contends, in effect, that this case is indistinguishable from *Muller v. Dept. of Agriculture*, 164 Or App 11, 988 P2d 927 (1999), and, therefore, the court correctly dismissed with prejudice all of the claims except the section 1983 claim. As to the section 1983 claim, defendant concedes that the court erred in dismissing the claim for plaintiff's failure to exhaust his administrative remedies. That concession is well taken, *see Nutbrown v. Munn*, 311 Or 328, 338, 811 P2d 131 (1991), *cert den*, 502 US 1030 (1992) ("A state generally may

---

a claim. In all events, it would not be appropriate for us to resolve the case on such a basis because the dismissal of plaintiff's claims on jurisdictional grounds foreclosed any opportunity for plaintiff to replead his claims to address the purported deficiencies in them. *See, e.g., Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 660, 20 P3d 180 (2001) ("[E]ven if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a different record below had the prevailing party raised that issue, * * * then [the court] will not consider the alternative basis for affirmance." (Emphasis omitted.)). For all of those reasons, we address only whether the court erred in dismissing the claims for lack of subject matter jurisdiction.

not erect procedural barriers such as requiring that state remedies be sought and denied, before the federal remedy is invoked."), and, accordingly, the court erred in dismissing the section 1983 claim.[5] Further, for the reasons stated below, we conclude that the court did not err in dismissing plaintiff's lack-of-authority and contract-impairment claims but erred in dismissing plaintiff's breach-of-contract, due process, and equal treatment claims.

The critical inquiry in this case is twofold. First, we must determine whether plaintiff had to exhaust his administrative remedies under the APA before pursuing his court action because administrative remedies could afford him complete relief. If we conclude that plaintiff could not obtain complete relief on his claims, then we must determine whether the court had to abate the action in order to allow plaintiff to exhaust his administrative remedies as to the issues that the agency has the authority to decide.

A.    *The Declaratory Relief Claims*

The premise that an agency has initial authority under the APA to resolve a dispute over the agency's actions stems from the oft-repeated principle that the review procedure established in the APA, when it is available, is the exclusive means of reviewing the legality of an agency's action. *See FOPPO v. County of Marion*, 93 Or App 93, 97, 760 P2d 1353 (1988), *rev den*, 307 Or 326 (1989) (circuit court did not have authority to decide the plaintiff's claims for declaratory relief against PERS because "PERS is subject to the APA; therefore, the APA provides the exclusive methods for its actions and for review of those actions"); *see also Bay River v. Envir. Quality Comm.*, 26 Or App 717, 720, 554 P2d

---

[5] Defendant contends that, despite the court's error in dismissing the section 1983 claim for lack of subject matter jurisdiction, we should nonetheless affirm the dismissal under the "right for the wrong reason" principle because plaintiff had failed to allege ultimate facts in that claim sufficient to constitute a claim. However, as we stated above, the Supreme Court has explained in *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001), that, "even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a different record below had the prevailing party raised that issue, * * * then [the court] will not consider the alternative basis for affirmance." (Emphasis omitted.) That exception applies here, and, therefore, we decline to consider defendant's proffered alternative basis for affirmance.

620, *rev den*, 276 Or 555 (1976) ("The [APA] establishes a comprehensive pattern for the judicial review of administrative decisions. The various APA statutes governing judicial review provide the sole and exclusive methods of obtaining judicial review."). *But cf. Nutbrown*, 311 Or at 338 (explaining that exhaustion of state administrative remedies is generally not required to pursue a section 1983 claim). That principle flows from the exhaustion requirement in administrative law, *viz.*, "that as to matters within the jurisdiction of an administrative agency [j]udicial review is only available after the procedure for relief within the administrative body itself has been followed without success," *Mullenaux v. Dept. of Revenue*, 293 Or 536, 539, 651 P2d 721 (1982) (internal quotation marks omitted; brackets in original).[6] Therefore, if APA review could resolve the legality of a challenged agency action, then a party may not initiate a declaratory judgment action regarding the challenged agency action *while the APA proceeding is pending* and, thereby, circumvent the exclusive APA review process. *Eppler v. Board of Tax Service Examiners*, 189 Or App 216, 219, 75 P3d 900 (2003); *see also Bay River*, 26 Or App at 720 ("A party cannot ignore the judicial review provisions of the APA in favor of a general equitable or declaratory remedy.").

Here, plaintiff asserted two claims in his court action—the lack-of-authority and contract-impairment claims—in which he seeks solely declaratory relief establishing that PERS's trading restrictions were unlawful in some respect. When plaintiff filed the court action, the contested case proceeding that he had initiated to resolve the same issues—the legality of PERS's actions—was pending. Because plaintiff could obtain in the contested case proceeding the relief that he seeks on his declaratory relief claims— *viz.*, a determination of the legality of the trading restrictions—he cannot circumvent PERS's authority to resolve those issues by seeking declaratory relief without first exhausting his administrative remedy through the contested

---

[6] *See Bay River*, 26 Or App at 721-22 ("Th[e] [exhaustion] principle could hardly be more relevant in this case. * * * [W]e hold that the circuit court has no jurisdiction to review agency orders that, as in this case, trigger the availability of a contested case hearing, and that are subject to modification in such an agency proceeding.").

case proceeding. Therefore, the court did not err in dismissing the lack-of-authority and contract-impairment claims.[7]

B.    *The Compensatory Relief Claims*

In contrast to a court's lack of authority to resolve a claim when a party has failed to exhaust an administrative remedy that could afford the party complete relief on the claim, the exhaustion principle does not defeat a court's authority to resolve a claim when the available administrative remedy, even if pursued successfully, would not accomplish the party's desired result. *Lyke v. Lane County*, 70 Or App 82, 85, 688 P2d 411 (1984). Put differently, a party may invoke the exhaustion principle as a basis for dismissal when the available administrative remedy is "adequate to redress the aggrieved party's interests." *Ayres v. Board of Parole*, 194 Or App 429, 436, 97 P3d 1 (2004).[8]

Therefore, to determine if the exhaustion principle denies the court the authority to resolve plaintiff's breach-of-contract, due process, and equal treatment claims, we must decide whether the contested case proceeding could afford plaintiff complete relief on those claims, specifically, the compensatory relief that he seeks in them.

As noted above, plaintiff's argument on appeal assumes that he cannot recover compensatory relief in the contested case proceeding, and defendant does not take issue with that assumption.[9] Further, based on our review of the

___

[7]  Plaintiff did not assign error to the court's dismissal of his claims with prejudice, and, therefore, we express no opinion as to whether the court erred in doing that.

[8]  Similarly, the United States Supreme Court has concluded that the exhaustion principle does not apply under federal common law where "an administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief."*McCarthy v. Madigan*, 503 US 140, 147, 112 S Ct 1081, 117 L Ed 2d 291 (1992) (internal quotation marks omitted). In *McCarthy*, the Court concluded that the exhaustion principle did not prevent the petitioner from bringing his claim seeking compensatory relief for a violation of his rights as guaranteed by the Eighth Amendment to the United States Constitution because, in part, "the administrative 'remedy' does not authorize an award of monetary damages—the only relief requested by [the petitioner] in this action." *Id.* at 152.

[9]  Further, we note again that part of PERB's reasoning for dismissing the contested case proceeding was that plaintiff could not recover in that proceeding the compensatory relief that he sought.

applicable law, we have not found any authority for PERS to award compensatory relief to Plan participants of the type sought by plaintiff. Therefore, the authority for plaintiff to obtain compensatory relief in the contested case proceeding would have to be found in the APA. In that respect, the APA gives a reviewing court in either a contested case proceeding or an other than contested case proceeding—the Court of Appeals or the circuit court, respectively—authority to "[o]rder such ancillary relief as the court finds necessary to redress the effects of official action wrongfully taken or withheld." ORS 183.486(1)(b). The Oregon Supreme Court has recognized, in *dictum*, that ORS 183.486(1)(b) "clearly authorizes monetary relief." *Burke v. Children's Services Division*, 288 Or 533, 544, 607 P2d 141 (1980).

In *Burns v. Board of Psychologist Examiners*, 116 Or App 422, 841 P2d 680 (1992), we addressed the scope of ancillary relief under ORS 183.486(1)(b) in the context of an other-than-contested-case review of an agency order. The petitioner sought tort damages on judicial review of the respondent's denial of his application for a psychologist's license. After acknowledging the Supreme Court's *dicta* in *Burke* and recognizing that the court had not determined in *Burke* the types of monetary relief that are available under ORS 183.486(1)(b), we concluded that tort damages are not available under that provision, reasoning that

"ORS 183.482 and ORS 183.484 provide for judicial review of agency orders by the Court of Appeals and the circuit court, respectively. Under both provisions, the court conducts the review, and jury trials are not available. Moreover, the Court of Appeals has *no authority to make an initial award of compensatory damages under any circumstances.* * * * [I]f the legislature had intended to give this court and the circuit court the authority to award compensation for tort claims in the course of reviewing administrative orders, we think that it would have been far less oblique in saying so than ORS 183.486(1)(b) reads."

*Burns*, 116 Or App at 425 (emphasis added).

Here, plaintiff initiated a contested case proceeding under the APA to challenge the trading restrictions placed on his Plan account, and, pursuant to ORS 183.482(1), we have

jurisdiction to review PERB's order in that proceeding. Because we have no authority under ORS 183.486(1)(b) to award compensatory damages in the first instance, plaintiff cannot recover compensatory damages in the contested case proceeding, and, hence, his administrative remedy is not adequate to redress his interests. Accordingly, the exhaustion doctrine does not operate to deny the court the authority to resolve plaintiff's compensatory relief claims.

However, because the pending contested case proceeding could affect plaintiff's entitlement to compensatory relief on the claims for which he seeks that relief, exhaustion does prevent the court from resolving plaintiff's compensatory relief claims until he has exhausted his administrative remedies through the contested case proceeding. *See Premier Technology v. Oregon State Lottery*, 136 Or App 124, 132, 901 P2d 883 (1995) ("When an agency uses the administrative process to [breach a contract], the other party may seek to invalidate the agency action that constituted the breach, on the basis that the action did not comport with administrative law. In such a case, APA review would be exclusive as to the validity of the agency action."). Therefore, because the exhaustion principle does not prevent the court from awarding compensatory relief to plaintiff on his breach-of-contract, due process, and equal treatment claims but does prevent the court from doing so until plaintiff has completed the pending contested case proceeding, the court should not have dismissed on exhaustion grounds plaintiff's compensatory relief claims but, rather, should have abated them. *Cf. Boise Cascade Corp.*, 325 Or at 193 (explaining that, under the primary jurisdiction doctrine, "[t]he court retains jurisdiction over the dispute itself and all other issues raised by the dispute, but it cannot resolve that dispute until the agency has resolved the issue that is in its primary jurisdiction" (internal quotation marks omitted)); *Dreyer v. PGE*, 341 Or 262, 283, 287, 142 P3d 1010 (2006) (concluding that court had "legal duty to abate the proceedings" pending agency's resolution of issues within its primary jurisdiction).[10]

---

[10] As discussed above, defendant also argued before the trial court that the claims should be dismissed for failure to state ultimate facts sufficient to constitute a claim, but, because of the reasons that we identified above, 245 Or App at 24-25 n 4, we express no opinion as to whether the court should have dismissed the claims under ORCP 21 A(8).

According to defendant's argument, that conclusion appears to conflict with our decision in *Muller*, 164 Or App 11. In *Muller*, the plaintiff sued the Oregon Department of Agriculture for negligently denying the plaintiff's application for a permit to burn his grass-seed fields, seeking damages for monetary losses that he had suffered as a result of the permit denial. The defendant moved to dismiss the action, arguing that the trial court lacked jurisdiction to review its denial of the plaintiff's application because the validity of that decision was subject to exclusive review under the APA. The trial court denied the motion, and the plaintiff obtained a judgment for damages after a trial. However, before filing the negligence action, the plaintiff had requested a contested case hearing under the APA—as authorized when the defendant denied a field-burning permit—and that proceeding apparently was still pending when the defendant appealed the judgment that the trial court had entered that awarded damages to the plaintiff.

On appeal, the defendant argued that the trial court had erred in denying the defendant's motion to dismiss the action for lack of jurisdiction, renewing its argument that the APA was the exclusive means to review the validity of the agency's decision to deny the plaintiff a field-burning permit. In response, the plaintiff argued that he was seeking damages for the consequences of the defendant's denial and was not challenging the validity of the agency's order. We agreed with the defendant that the trial court had erred in denying the motion to dismiss, concluding that the plaintiff's "entitlement to damages depends on the validity of [the defendant's] denial," and, because the plaintiff challenged "the validity of an agency action on the ground that it 'violated a statute or rule or was otherwise in violation of administrative law,'" the plaintiff's challenge was subject to review exclusively under the APA. *Muller*, 164 Or App at 16 (quoting *Premier Technology*, 136 Or App at 132).

After noting that the potential for inconsistent decisions and collateral challenges bolstered our conclusion, we considered the plaintiff's argument that "APA review is inadequate, because the remedy [the plaintiff] seeks—damages—is not available under the APA." *Id.* We rejected that argument, reasoning that it "amounts to mere question begging[.]"

If [the plaintiff] is entitled to a remedy, then [the plaintiff] must establish the invalidity of the agency action in the first place. We merely hold that the exclusive mechanism for establishing the invalidity of the agency action is provided in the APA." *Id.* at 16-17. However, we did not consider whether the exhaustion principle would require the court to abate rather than dismiss the action pending completion of the contested case proceeding—a potential disposition of the court action for which the plaintiff apparently did not contend. Our ultimate conclusion in *Muller—viz.*, that the validity of the agency's action had to be resolved first through the APA review process, if available—comports with our conclusion in this case that plaintiff must exhaust his administrative remedies under the APA as a predicate to establishing his right to recover compensatory relief in the court action. Hence, *Muller* does not conflict with our conclusion that plaintiff's compensatory relief claims had to be abated rather than dismissed.

In sum, the court did not err in dismissing plaintiff's lack-of-authority and contract-impairment claims but erred in dismissing plaintiff's breach-of-contract, due process, equal treatment, and section 1983 claims. We therefore reverse the court's judgment as to the latter claims.

Dismissal of breach-of-contract, due process, equal treatment, and section 1983 claims reversed and remanded; otherwise affirmed.