Argued and submitted September 11, reversed and remanded with instructions October 28, reconsideration denied December 18, 1987, petition for review denied March 1, 1988 (305 Or 273)

HARSH INVESTMENT CORP. et al,
*Respondents,*

*v.*

STATE OF OREGON
by and through
STATE HOUSING DIVISION,
*Appellant.*

(A8311-07238; CA A39941)

744 P2d 588

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Charles F. Adams, Portland, argued the cause for respondents. With him on the brief was Susan M. Hammer, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

## WARDEN, P. J.

The State Housing Division (the Division) appeals from a judgment for plaintiffs in this action for breach of an alleged contract to make a construction loan. It asserts that it was without authority to enter into a contract on the terms that plaintiffs allege that it did and that plaintiffs, therefore, may not seek damages for any breach. We agree and reverse.

The 1977 legislature proposed a constitutional amendment to authorize the sale of general obligation bonds to finance housing for low-income, elderly and disabled persons. It also adopted enabling legislation, which was to be effective only if the voters approved the proposed amendment. Or Laws 1977, ch 485. The amendment was approved on May 23, 1978, Or Const, Art XI-I (2), and the legislation then went into effect. It placed responsibility for carrying out the program in the Division. Or Laws 1977, ch 485, § 7(1).[1] One of the Division's responsibilities under the act was to "[a]dopt criteria for approval of qualified borrowers of funds to finance multifamily housing for elderly households of low income." Or Laws 1977, ch 485, § 7(2)(a). It adopted those criteria by promulgating a temporary rule on July 12, 1978.[2] That rule provided:

> "Division shall not disburse any loan funds to an Approved Housing Sponsor until such loan is evidenced by a fully executed note or other evidence of indebtedness, a mortgage, *appropriate evidence of mortgage insurance,* and by other instruments as the Housing Division may in specific cases deem necessary or appropriate." (Emphasis supplied.)

In mid-1977, plaintiffs first approached the Division about financing for Clay Tower, a low-income elderly housing project that it proposed to build near downtown Portland. The Federal Department of Housing and Urban Development would provide rent subsidies for many of the tenants of the

---

[1] Legislative Counsel did not include this act in the Oregon Revised Statutes until the 1979 edition. However, that codification included several amendments which the 1979 legislature made. Because the 1977 version is the one involved in this case, we cite to the session law, rather than the later codification.

[2] An agency may adopt a temporary rule without complying with normal rulemaking procedures when the agency needs to act faster than those procedures would permit. In 1978, a temporary rule could be effective for no more than 120 days. *Former* ORS 183.335(5) (since *amended by* Or Laws 1979, ch 593, § 11; Or Laws 1981, ch 755, § 2; Or Laws 1987, ch 861, § 2).

project after completion, and the Federal Housing Administration (FHA) would provide mortgage insurance. By spring, 1978, the Division and the State Housing Council[3] had agreed to provide both construction and permanent financing for the project. It would be the first time that the Division had financed the construction of a project, and it designed the rule which it adopted on July 12 to give the state adequate protection from the risks involved in doing so. Mortgage insurance was an important aspect of that protection. The parties agreed that the Division would loan plaintiffs $7,500,000 for construction of the project. However, the FHA would not insure the mortgage for more than $7,000,000. The Division would not accept insurance for less than the full amount of the loan, and it refused to accept a guarantee of the loan by plaintiff Harsh Investment Corporation, together with a $300,000 letter of credit, in lieu of the required mortgage insurance.[4] Plaintiffs did not offer mortgage insurance from a source other than FHA.

After further discussions, in which the Director of the Department of Commerce and representatives of the Governor's office were involved, the loan came before the Housing Council for a decision on September 26, 1978, two days before the scheduled ground breaking. The council reluctantly agreed to provide construction financing, with the mortgage secured by the corporation's guarantee and the letter of credit in lieu of mortgage insurance, just as plaintiffs had previously offered. The Division issued a commitment letter two days later; it did not amend the administrative rule to delete the requirement of mortgage insurance. Before it had actually paid any money on this commitment, both Legislative Counsel and the Attorney General gave opinions that the commitment was illegal, because it violated the rule. The Division then cancelled the commitment. Plaintiffs obtained alternative construction financing at considerably higher rates of interest than the Division would have charged; the Division provided permanent financing after construction of the project was completed.

---

[3] The State Housing Council acted as the ultimate policy-making body for the Division.

[4] As the Division points out, because Harsh Investment was one of the Clay Tower project's partners, it was liable for any mortgage default without a separate guarantee. ORS 68.270.

In this action, plaintiffs seek as damages the increased interest costs that they incurred during the construction period. Both parties moved for summary judgment on the issue of liability. The trial court granted plaintiffs' motion and denied the Division's. After a jury had determined the amount of damages, the court entered the judgment from which the Division appeals.[5]

Plaintiffs' right to sue for a breach of contract comes from ORS 30.320, which provides, in pertinent part:

> "A suit or action may be maintained * * * against the State of Oregon by and through and in the name of the appropriate state agency upon a contract made by * * * such agency and *within the scope of its authority* * * *." (Emphasis supplied.)

If the commitment letter, which is the alleged contract, exceeded the scope of the Division's authority, plaintiffs have no right to damages. *See Public Market Co. v. Portland,* 171 Or 522, 130 P2d 624, 138 P2d 916 (1943); *Baker v. Deschutes County,* 10 Or App 236, 498 P2d 803, *rev den* (1972). The Division argues that the letter was made without authority, because neither the Housing Council nor the Division could waive the requirement in the rule that plaintiffs present "appropriate evidence of mortgage insurance." Plaintiffs make a number of arguments, none of which is persuasive.

Plaintiffs first assert that the Division had not required mortgage insurance on many previous loans, although the relevant rules were similar to the rule involved in this case. That alleged practice shows, plaintiffs argue, that the Division interpreted the rules to require appropriate guarantees of performance, not necessarily limited to third-party mortgage insurance. Because the Division issued the commitment letter on the basis of guarantees which the Housing Council considered appropriate, plaintiffs argue, they had complied with the rule and the commitment was authorized.

There are at least two problems with that argument. First, the evidence concerning other loans is inadequate. The Division's director testified in a deposition that the Division had made other loans without mortgage insurance. He did not

---

[5] The judgment did not resolve other claims that plaintiffs asserted in their complaint, but it complies with ORCP 67B.

give any further details concerning specific other loans. However, the Division made most, if not all, of them under different programs with different applicable rules. At least one program permitted the use of uninsured mortgages for collateral, if the principle amounts were less than 80 percent of the market values of the mortgaged properties. OAR 813-10-306(2)(f)(G). The record does not show whether the other loans were made under that provision or under what circumstances and conditions they may have been made.[6] Even if the rule were so vague that past practices of the Division could be used to support the interpretation for which plaintiffs contend, they have not adequately shown what those practices were.

■ The second problem is that the rule is not ambiguous. It required "appropriate evidence of mortgage insurance." Mortgage insurance is "a contract where one undertakes to indemnify another * * * upon determinable risk contingencies," ORS 731.102(1), "against financial loss" from the "[n]onpayment of principal, interest and other sums agreed to be paid under the terms of an obligation secured by a mortgage * * *." ORS 731.178(1). There is no reason to believe that the rule used the term in any other sense. A guarantee of the mortgage by the mortgagor is simply not mortgage insurance. Whether or not plaintiffs' offer would have provided adequate *assurance* of payment, it did not provide *insurance*. The rule would allow mortgage insurance by an insurer other than the FHA, but it necessarily requires a third party with independent resources to insure the risk involved.

■ Plaintiffs next argue that the statute did not require defendant to adopt rules to implement the elderly housing program. They point out that Or Laws 1977, ch 485, § 7(2), requires the Division to "[a]dopt criteria" for approval of eligible borrowers, and to "[a]dopt standards" for determining eligible households, but to "[a]dopt rules" necessary for the efficient management of the fund. That use of different terms, plaintiffs suggest, shows that the Division did not need to adopt rules in order to determine criteria for borrowers; it only needed to "[a]dopt criteria." Its adoption of rules, instead, was not required, plaintiffs assert, and the rules, therefore, were not binding on it.

---

[6] The director emphasized that the Clay Tower loan was to be the Division's first construction loan, and that for that reason he was especially insistent on mortgage insurance, until his superiors removed him from the negotiations.

Plaintiffs do not indicate how the Division could adopt criteria other than by rule-making. It could not, in the light of the statutory definition of a rule. ORS 183.310(8).[7] The statute shows that the legislature intended the Division to adopt rules before making loans under the elderly housing program. *See Trebesch v. Employment Division,* 300 Or 264, 710 P2d 136 (1985); *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980).

■     There is a more basic problem with plaintiffs' argument. Whether or not an agency is *required* to adopt rules, when it has authority to adopt them and does so, it must follow them. The rule adopted was within the statutory authority delegated to the agency; when the Division adopted it, the rule became as binding as if the legislature itself had acted. *Bronson v. Moonen,* 270 Or 469, 476-477, 528 P2d 82 (1974).

■     Plaintiffs assert that previous cases which have voided contracts or agency action for failure to follow rules have done so for the benefit of persons who were either affected by agency decisions or were parties to contracts with other private parties. None involved a state agency trying to avoid its own agreement. If that is the fact, it is irrelevant. Although it may be anomalous for an agency to use its failure to comply with its own rules as a defense to liability, it is an unavoidable consequence of the requirement that agencies obey the law. An agency is not authorized to act contrary to its rules, and those who deal with it cannot benefit from its doing so. If it were otherwise, the rules would become meaningless. Plaintiffs knew what the rule required when they convinced the Housing Council to ignore it; they cannot now be surprised at its enforcement.[8]

---

[7] ORS 183.310(8) provides, in pertinent part:

" 'Rule' means any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency. The term includes the amendment or repeal of a prior rule * * *."

[8] Plaintiffs also argue that the rule was designed to benefit the Division, not private parties, and that the Division cannot, therefore, use it to the detriment of private parties such as themselves. Even if this argument had any merit, which it obviously does not, its foundation is incorrect. Mortgage insurance was not required to benefit the Division. Rather, it was to benefit the state and its taxpayers by ensuring that there would be adequate security for the general obligation bonds issued under the program. It would avoid the necessity, in case of a default by the borrower, of the state having to repay the bonds from taxes and the accompanying possibility of damage to its credit rating.

■ ■ Plaintiffs' final arguments are that the council, by voting to accept plaintiffs' guarantees, had agreed to amend the rule to delete the requirement of mortgage insurance, that it had waived the insurance requirement and that it is estopped to assert it. All of these arguments also fail. The record is insufficient to raise an issue of fact whether the council agreed that the rule would be amended, assuming that such an agreement would be enforceable. Those who deal with state officers must know the extent of their authority and cannot claim by estoppel what they could not receive by contract. The state is no more bound by a promise that it may not lawfully make or perform than is a municipality. *Wiggins v. Barrett & Associates, Inc.,* 295 Or 679, 683, 669 P2d 1132 (1983); *see also Corvallis Sand & Gravel v. Land Board,* 250 Or 319, 328, 439 P2d 575 (1968); *Public Market Co. v. Portland, supra,* 171 Or at 593; *Rohde v. State Industrial Acc. Com.,* 108 Or 426, 438, 217 P 627 (1923). Neither could the Housing Council waive a legal prerequisite to its actions; to permit it to do so would render meaningless the statutory procedures for suspending a rule. *See* ORS 183.335(5); *see also School Dist. No. 1 v. Teachers' Retirement Fund,* 163 Or 103, 95 P2d 720 (1939).

Plaintiffs' arguments, boiled down, amount to a request that we treat a public enactment intended to express and implement the state's public policy as though it were simply a provision in an offer for a contract between two private parties. We cannot do that. The letter of commitment was invalid, because it did not require plaintiffs to present adequate evidence of mortgage insurance and thus did not comply with the rule. The trial court should have granted defendant's motion for summary judgment.

Reversed and remanded with instructions to grant defendant's motion for summary judgment and to enter judgment accordingly.