AOYAGI, J.
*293 *276 Plaintiff West Hills Development Co. (West Hills) completed certain road improvements in the North Bethany area of Washington County in connection with a residential development. West Hills thereafter applied to Washington County for Washington County Transportation Development Tax (TDT) credits and North Bethany Transportation System Development Charge (NBTSDC) credits. The county awarded some, but not all, of the requested credits. West Hills appealed the decision, and defendant, a county hearings officer, upheld it. West Hills then petitioned for a writ of review in the trial court, but the trial court rejected West Hills' claims of error. West Hills appeals the trial court's decision. For the reasons that follow, we affirm.
As preliminary context for our discussion, the TDT is charged against new development in Washington County based on the development's projected impact on the transportation system. See Washington County Code (WCC) 3.17.010-3.17.190. The NBTSDC is an additional charge that applies solely to projects in North Bethany and is used to fund local transportation infrastructure in North Bethany. See Washington County Resolution and Order 2010-098 (WCRO 2010-098). When a developer constructs "qualified public improvements" as part of a development project in North Bethany, the county awards TDT and NBTSDC credits to offset the amounts due as provided in the county code and WCRO 2010-098. See WCC 3.17.070 (regarding TDT credits for qualified public improvements); WCRO 2010-098, Attachment A, § 070 (regarding NBTSDC credits for qualified public improvements); see also ORS 223.304(4) (defining "qualified public improvement").
The facts relevant to this appeal are undisputed. As conditions of approval for an 85-lot residential subdivision in North Bethany, Washington County required West Hills to make certain improvements to NW Springville Road and NW Brugger Road. Both streets run adjacent to, but not through, the subdivision. After completing the improvements, West Hills applied to the county for TDT and NBTSDC credits based on the cost of the improvements. West Hills originally requested total credits of $580,645 for *277 the improvements to NW Springville Road and NW Brugger Road. It later reduced its request to $388,104. The county ultimately awarded total credits of $238,215. West Hills appealed the credit determination, contesting the county's methodology for calculating the credits. The county maintained that its calculations were correct.
The matter was referred to defendant, a county hearings officer. In addition to challenging the county's methodology for calculating the credits, West Hills argued to the hearings officer that local governments are allowed to provide greater credits to developers than strictly required, citing ORS 223.304(5)(c). West Hills asserted that it and "other Bethany developers" had "understood" that the county would reimburse the total cost of street improvements in North Bethany-which the parties refer to as "whole street improvements"-through TDT and NBTSDC credits, but that the county was now limiting the credits to the cost of improvements that provided capacity beyond that needed for the development and was not reimbursing storm-water improvements. According to West Hills, "the County reached an oral agreement with West Hills" and "assur[ed]" West Hills that the county would give a "100 percent" credit for whole street improvements.
Defendant issued his decision in 2015, rejecting West Hills' arguments. Defendant concluded that the county's credit determinations were consistent with the applicable rules. As for an alleged oral agreement to award greater credits, defendant "[a]ssum[ed] for the sake of discussion that County staff and North Bethany developers 'agreed' that street improvements would be fully reimbursable," but he stated that "it is axiomatic that those staff persons must have had the authority to bind the County to that agreement," and he concluded that there was "no evidence in the record to demonstrate that the County staff possessed the authority to bind the County in the manner [West Hills] suggests." In defendant's view, only the Board of County Commissioners could potentially bind the county to an oral contract, *294 and it was unclear whether even the board could do so. Finally, defendant concluded that, although ORS 223.304(5)(c)"does appear to grant local governments *278 latitude to provide a credit that is larger or different than what an applicant would otherwise be entitled to receive," the statute "places no affirmative duty on County staff to deviate from the express language governing credits in the TDT and NBTSDC regulations." (Emphasis in original.)
West Hills petitioned for a writ of review under ORS 34.020. In its petition, among other things, West Hills asserted that it had relied on "oral agreements with County Staff" and that "County staff" had "actual and/or apparent authority to bind the County." Defendant, who filed the opening merits brief in the trial court, asserted that he had not erred in his decision because TDT and NBTSDC credit eligibility was to be determined by the director of the Washington County Department of Land Use and Transportation, because the county used the correct methodology for calculating West Hills' credits, and because there was no evidence that anyone with authority had bound the county to awarding a greater credit to West Hills. In response, West Hills argued, among other things, that it would be "unreasonable and unrealistic" for the director to make all credit determinations himself, that the director was "presumptively permitted to subdelegate certain tasks and duties to [his] subordinates and employees," that delegation to "County staff" was the "practice and understanding of all persons involved," and that county staff had agreed to award credits for whole street improvements on NW Springville Road and NW Brugger Road to West Hills. Alternatively, West Hills argued, if the county staff did not have actual authority to enter into the alleged oral agreement, they had apparent authority to do so.
The trial court affirmed defendant's decision. The court concluded that county staff lacked authority to bind the director with respect to credit determinations and that it therefore was irrelevant whether any putative oral agreement existed.
West Hills appeals the trial court's judgment, raising three assignments of error. First, it asserts that the trial court erred in "affirming [defendant's] finding that the TDT and NBTSDC do not allow credits for the total costs of roadway improvements." Second, it asserts that the trial *279 court erred in "affirming [defendant's] finding that County staff did not have authority under the TDT and NBTSDC to award credits for the total cost of roadway improvements." Third, it asserts that the trial court erroneously "failed to consider [West Hills'] argument that County staff had apparent authority to enter into a binding, enforceable agreement and should be estopped from denying credits to West Hills for the total cost of roadway improvements."
In a writ of review proceeding, the trial court's task is to determine whether an inferior court, officer, or tribunal subject to writ of review has:
"(a) Exceeded its jurisdiction;
"(b) Failed to follow the procedure applicable to the matter before it;
"(c) Made a finding or order not supported by substantial evidence in the whole record;
"(d) Improperly construed the applicable law; or
"(e) Rendered a decision that is unconstitutional."
ORS 34.040(1). We review a trial court's judgment on a writ of review for legal error. Johnson v. Civil Service Board , 161 Or. App. 489, 498, 985 P.2d 854, modified on recons , 162 Or. App. 527, 986 P.2d 666 (1999). "In reviewing the trial court's determination, we consider the record that was before the [inferior court, officer, or tribunal]." Constant Velocity Corp. v. City of Aurora , 136 Or. App. 81, 85, 901 P.2d 258 (1995).
The premise of West Hills' first assignment of error is that both defendant and the trial court erroneously concluded that the county code and WCRO 2010-098 "do not allow" the county to award a developer any greater credits than those required under the code and order. West Hills asserts that, in actuality, under ORS 223.304(5), the county does have discretion to award greater credits.
*295 West Hills does not identify when or where defendant or the trial court made the alleged ruling that it challenges. See ORAP 5.45(4)(a) (requiring appellant to specifically identify the challenged ruling, including a citation to the record and pertinent quotations). In fact, in his order, *280 defendant expressly agreed with West Hills that ORS 223.304(5)(c)"does appear to grant local governments latitude to provide a credit that is larger or different than what an applicant would be entitled to receive." See ORS 223.304(5)(c) (providing that a "local government" may provide a "greater" credit in certain circumstances "if a local government so chooses").[1] The trial court reiterated that statement in its own written opinion: "The Hearings Officer specifically noted that while ORS 223.304(5)(c)allows local governments the latitude to grant a credit larger than what an applicant would otherwise be entitled to received, the statute does not place an affirmative duty on County Staff to deviate from the express terms of the TDT and NBTSDC." (Emphasis in original.) West Hills does not address those portions of defendant's and the trial court's decisions or identify any contrary ruling. Accordingly, we reject West Hills' first assignment of error.
That brings us to the second and third assignments of error. The real dispute in this case is not whether the county could award greater credits than required but, rather, whether it entered into a binding agreement to do so . Relevant to that issue, West Hills argues that county staff entered into an oral agreement or agreements with West Hills to award credits for the cost of whole street improvements and that county staff had actual or apparent authority to do so. Actual authority is the subject of West Hills' second assignment of error, while apparent authority is the subject of its third assignment of error.
With respect to actual authority, both the county code and WCRO 2010-098 expressly provide that "credit eligibility determinations shall be determined by the Director." WCC 3.17.070 (TDT); WCRO 2010-098, Attachment A, § 070 (NBTSDC). West Hills argues that "county staff" nonetheless had actual authority to determine the TDT and NBTSDC credits provided to West Hills, i.e. , to grant credits greater than those required by the code and order but consistent with the alleged oral agreement between staff and West Hills. In particular, West Hills argues that it is *281 "well established that the head of an agency or department is presumptively permitted to subdelegate certain tasks and duties to their subordinates and employees" and that "there can be little doubt of the County's implied authorization of subdelegation in the TDT and NBTSDC."
The difficulty with that argument is that, even assuming that the director had authority to delegate credit determinations to "county staff," there is no evidence that he actually did delegate that responsibility to the unidentified county staff members who allegedly entered into an oral agreement or agreements with West Hills.[2] The only purported evidence of actual delegation that West Hills cites is the Washington County Department of Land Use and Transportation Long Range Planning Division's "Countywide Transportation Development Tax Procedures Manual," dated 2009, which includes a statement that "Staff reviews the [credit] request in order to assure that the project meets eligibility requirements and that the actual construction costs incurred are reasonable. If all criteria are met, the jurisdiction will issue credits for the applicable properties."
That statement is insufficient to establish delegation and actual authority. County staff may be responsible for the "review" of credit requests, but the cited portion of the procedures manual says nothing about staff having *296 the authority to make the official TDT and NBTSDC credit determinations for which the director is responsible under the county code and WCRO 2010-098. Nor does it suggest that staff members have authority to enter into oral agreements with developers to provide greater credits than normally provided. It refers only to the "the jurisdiction" issuing credits if "all criteria are met." The trial court therefore did not err in affirming defendant's ruling that there was "no evidence in the record to demonstrate that County staff *282 possessed the authority to bind the County in the manner [West Hills] suggests." We reject the second assignment of error regarding the actual authority of "county staff" to enter into an alleged oral agreement with West Hills to provide greater credits for the improvements to NW Springville Road and NW Brugger Road.
West Hills' final assignment of error pertains to the "apparent authority" of county staff to enter into the alleged oral agreement. We assume without deciding that this issue was preserved before the hearings officer.[3] West Hills asserts that the trial court failed to consider its alternative argument regarding apparent authority and that, given county staff's apparent authority, the county should be estopped from denying credits to West Hills for the total cost of roadway improvements.
The trial court's written opinion does not specifically distinguish between actual and apparent authority, referring generally to "authority." However, West Hills argued both actual and apparent authority to the trial court. And, in its written opinion, the court notably cited Harsh Investment Corp. v. State Housing Division , 88 Or. App. 151, 744 P.2d 588 (1987), rev. den. , 305 Or. 273, 752 P.2d 1219 (1988), both for the proposition that an agency must follow its own rules and for the proposition that "those dealing with the governmental body must know the extent of their authority." See id. at 158, 744 P.2d 588 ("Those who deal with state officers must know the extent *283 of their authority and cannot claim by estoppel what they could not receive by contract.") We therefore understand the trial court to have rejected West Hills' apparent-authority argument on the merits.
We also conclude that it did not err in doing so. To the extent that West Hills is correct that estoppel is available in this context based on the apparent authority of county staff to make binding credit determinations on behalf of the county-an issue on which we express no opinion-West Hills acknowledges that, under Wiggins v. Barrett & Associates, Inc. , 295 Or. 679, 699, 669 P.2d 1132 (1983), it had to prove that it had "no reason to know of the want of actual authority" on the part of county staff in order to prevail on its estoppel argument. Given the express provisions in the county code and in WCRO 2010-098 that eligibility for TDT and NBTSDC credits is to "be determined by the Director," it cannot be said that West Hills had "no reason to know" that county staff lacked authority to commit the county to providing greater credits to West Hills than provided by the county code and WCRO 2010-098. West Hills could not simply assume that "county staff" had authority to enter into an oral agreement that would bind the county despite those provisions. Nor did it identify any evidence to the hearings officer that might overcome that express language.
*297 Accordingly, as with the first two assignments of error, the trial court did not err in affirming defendant's decision.
Affirmed.

We express no opinion on whether this is a situation in which a greater credit is permitted.

West Hills never identifies who among "county staff" entered into the alleged oral agreement or when that occurred. As a result, it is unclear, for example, to what extent West Hills is relying on conversations between county staff and developers generally regarding the anticipated terms and application of the TDT and NBTSDC before they went into effect (the evidence on which defendant focused in his written opinion) or whether it is relying on conversations between specific, albeit unidentified, county staff members and West Hills representatives regarding the credits for this project.

On appeal, West Hills states that it "preserved its claim of error by petitioning the Circuit Court for a writ of review of [defendant's] decision." That statement does not comply with ORAP 5.45(4). The act of petitioning for a writ of review was necessary to obtain review but says nothing about preservation. Even when the other party does not challenge preservation, as here, we have an independent obligation to assess preservation. Harrison v. Hall , 211 Or. App. 697, 701, 156 P.3d 141, rev. den. , 343 Or. 159, 164 P.3d 1160 (2007). As such, we could decline to consider the third assignment of error, ORAP 5.45(4)(a), or reject it as unpreserved based on our own review, see Clinkscales v. City of Lake Oswego , 47 Or. App. 1117, 1123, 615 P.2d 1164, rev. den. , 289 Or. 741 (1980) (in writ of review proceeding, trial court should not have considered issue not raised to local government). However, because it is difficult to determine definitively on this particular record whether the issue was raised to the hearings officer, and because we affirm on the merits in any event, we choose to conditionally assume that the issue was preserved. Cf. State v. Sierra , 361 Or. 723, 733, 399 P.3d 987 (2017) ("Assuming, without deciding, that defendant preserved [the issue], defendant's argument fails."); State v. Zavala , 361 Or. 377, 384, 393 P.3d 230 (2017) (affirming on merits without deciding complicated preservation issue).