Argued and submitted September 24, 2019, petition for judicial review dismissed as moot December 23, 2020

## NORTHWEST AND INTERMOUNTAIN POWER PRODUCERS COALITION,
Community Renewable Energy Association,
Renewable Energy Coalition, and
The Public Utility Commission of Oregon,
*Respondents,*

*v.*

## PORTLAND GENERAL ELECTRIC COMPANY,
*Petitioner.*

Public Utility Commission of Oregon
UM1805; A167707

480 P3d 981

In 2005, the Public Utility Commission of Oregon (PUC) issued Order 05-584. In that order, it adopted a policy requiring standard contracts for purchase of electricity from qualifying facilities to, among other things, set fixed prices for the purchase of electricity for the first 15 years of every 20-year contract. Order 05-584 arguably left ambiguous whether the fixed-price term ran from the date of contract execution or from the first day of power supply. Following the order, the price term in Portland General Electric's (PGE) standard contracts ran from the date of contract execution, and complainants initiated an action to require PGE's fixed-price terms to run from the first day of power supply. On review, the PUC declined to interpret PGE's already approved contracts but clarified that Order 05-584 required fixed-price terms to run from the date of power supply. PGE petitioned for judicial review of the PUC's decision, but, during the judicial-review proceeding, the PUC promulgated OAR 860-029-0120, which requires that fixed-price terms commence from the date of power supply. Complainants contend that the PUC's rulemaking has rendered this appeal moot. *Held*: The PUC's rulemaking mooted the appeal; no ruling on any of the issues PGE raised before the Court of Appeals would have had a practical effect on PGE's rights or obligations.

Petition for judicial review dismissed as moot.

Anna M. Joyce argued the cause for petitioner. Also on the briefs were Dallas S. DeLuca, Anit K. Jindal, and Markowitz Herbold PC.

Nadia H. Dahab argued the cause for respondents Northwest and Intermountain Power Producers Coalition, Community Renewable Energy Association, and Renewable

Energy Coalition. Also on the answering brief were Steven C. Berman, Keil M. Mueller, Stoll Stoll Berne Lokting & Shlachter PC, Irion A. Sanger, and Sanger Law PC. Also on the supplemental brief were Steven C. Berman, Keil M. Mueller, Stoll Stoll Berne Lokting & Shlachter PC, Irion A. Sanger, and Sanger Thompson PC.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent The Public Utility Commission of Oregon. On the answering brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Keith L. Kutler, Assistant Attorney General. On the supplemental brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and Powers, Judge.

LAGESEN, P. J.

Petition for judicial review dismissed as moot.

**LAGESEN, P. J.**

This dispute about certain contracts to buy and sell electric power is before us on Portland General Electric Company's (PGE) petition for judicial review under ORS 183.482 of a final order of the Public Utility Commission of Oregon (PUC). We conclude that it has become moot by virtue of subsequent rulemaking by the PUC. Accordingly, we dismiss the petition.

At the core of this case are the PUC's requirements for standard contracts for the purchase of electricity from operators known as "qualifying facilities" or "QFs." In 2005, to implement the Public Utility Regulatory Policies Act, 16 USC § 824a-3, the PUC issued Order 05-584. In that order, the PUC adopted a policy requiring standard contracts for purchase of electricity from QFs to (1) have 20-year terms, (2) set fixed prices for the purchase of electricity for the first 15 years of the term, and (3) provide for market prices for the last five years of the contract term.

What Order 05-584 arguably left ambiguous was the start date for the period of 15 years of fixed prices: Did it run from the date of contract execution or did it start when the QF became operational and began supplying power under the contract? Although Order 05-584 prescribed standard terms for contracts with QFs, it did not prescribe a standard form for such contracts.

Following the issuance of Order 05-584, some power companies provided in their standard contracts with QFs that the 15-year fixed-price period commenced when the QF became operational and began to supply power. PGE apparently took a different approach.[1] Its standard contracts, in its view, allowed for the 15-year period to start on the date of contract execution. All of PGE's standard contracts were filed with, and approved by, the PUC.

---

[1] We say "apparently" because the parties dispute how PGE's previous standard contracts should be read. The PUC did not reach the issue in this proceeding, noting only that "PGE's approved standard contract filings *** may have limited the availability of fixed prices to the first fifteen years measured from contract execution," and, further, that if the contracts did in fact do so, "PGE cannot be found to have been in violation of our orders" because the PUC had approved those contracts.

In December 2016, the Northwest and Intermountain Power Producers Coalition, the Community Renewable Energy Association, and the Renewable Energy Coalition (collectively, complainants) initiated this complaint proceeding against PGE under ORS 756.500. They requested that (1) the PUC order PGE "to cease and desist *** openly disputing that it must offer 15 years of fixed prices from the QF's operation date," which is what complainants alleged the PUC orders required; (2) the PUC declare that PGE's standard contract "requires payment by PGE at fixed prices for 15 years after the QF's operation date rather than merely 15 years after the time of contract execution, unless express language is inserted by the QF that demonstrates a contrary intent"; (3) in the alternative to the first two forms of relief requested, order "PGE to file revised standard contracts clearly stating that the 15 years of fixed prices run from the commercial operation date"; and (4) the PUC order any additional relief "deem[ed] necessary" by the PUC.

Although it took a series of three orders,[2] the PUC ultimately resolved the case by leaving the past murky and making the future clear.

As for the past, the PUC declined to interpret PGE's previously approved standard contracts. Consequently, it did not determine the date on which the 15-year fixed-price term began under them. Relatedly, the PUC declined to determine whether PGE's past standard contracts complied with Order 05-584, explaining that the agency's approval of them meant that PGE could not be found to be in violation of its orders.

As for the future, the PUC explained how things should work going forward. It clarified that its policy in Order 05-584 should be understood "to explicitly require standard

---

[2] After the PUC issued the final order on review, Order No. 17-256, one of the complainants requested rehearing or reconsideration and, in Order No. 17-465, the PUC denied that request but "amend[ed] and clarif[ied] Order No. 17-256." Then, PGE requested rehearing or reconsideration and, in Order No. 18-079, the PUC denied that request but again made clarifying statements. For purposes of this opinion, general references to the order on review are to Order No. 17-256, as amended and clarified in the two later orders.

contracts, on a going-forward basis, to provide for 15 years of fixed prices that commence when the QF transmits power to the utility." The PUC stated further that "PGE should promptly file revisions to Schedule 201 which shall include a revised standard contract PPA with language consistent with our requirement that the 15-year term of fixed prices commences when the QF transmits power to the utility." Ultimately, the PUC ordered two things: (1) the dismissal of the complaint; and (2) "[w]ithin five business days of the date of this order, [PGE] shall file revisions to Schedule 201 of its tariffs consistent with this order."

Following the PUC's rejection of two requests for reconsideration, which resulted in some revisions and clarifications to the order on review, PGE filed this judicial-review proceeding under ORS 183.482. PGE raises two assignments of error. First, PGE argues that the PUC's decision to direct PGE "to alter the start date for the 15-year period of fixed prices for all future PGE standard contracts with QFs" represents a change in policy that is not "supported by substantial reason." Second, PGE contends that the PUC acted outside "the range of discretion delegated to the agency by law," and inconsistently with past practice, when, in the context of a complaint proceeding under ORS 756.500, it announced what PGE views as a new policy. For relief, PGE requests that the PUC's order be vacated and remanded.

Meanwhile, before complainants filed their answering briefs in this matter, the PUC promulgated administrative rules to address timing issues with the required contract terms for power purchase agreements with QFs. The pertinent rule, OAR 860-029-0120(3), provides:

> "Qualifying facilities have the unilateral right to select a purchase term of up to 20 years for a power purchase agreement. Qualifying facilities electing to sell firm output at fixed-prices have the unilateral right to a fixed-price term of up to 15 years."

For purposes of the provision, a "purchase term" is "the period of a power purchase agreement during which the qualifying facility is selling its output to the public utility." OAR 860-029-0010(26). Additionally, a "fixed-rate term,"

something that all parties agree is synonymous with a "fixed-price term,"[3] means,

> "for qualifying facilities electing to sell firm energy or firm capacity or both, the period of a power purchase agreement during which the public utility pays the qualifying facility avoided cost rates determined either at the time of contracting or at the time of delivery."

OAR 860-029-0010(16).

Complainants then filed their answering brief in this matter. They argue that the administrative rules mooted the issues raised by PGE because the rules supersede any policy statement made by the PUC in the order on review. Complainants argue further that, if the proceeding is not moot, then the PUC's decision is not erroneous. In its answering brief, the PUC argues that the matter is moot for a different reason: PGE complied with the directive to submit revised contracts and did not seek judicial review of the PUC orders approving those revised contracts. This means, according to the PUC, that resolution of PGE's contentions will not have a practical effect on its rights because it cannot affect those approved standard contracts.

Because the PUC did not address the effect of its own administrative rules in its initial brief to us, following oral argument, we requested supplemental briefing from the parties on that point; we viewed it as important to have the agency's take on how its own act of rulemaking might displace any policy announcement it made in the order on review. In its supplemental brief, the PUC explains that it interprets its new rules to require the 15-year fixed-price period to start on the date a QF becomes operational and begins supplying power, not on the date of contract execution. The PUC argues that, for this additional reason, this proceeding is moot. In their supplemental brief, complainants generally agree with the PUC's take, echoing the position taken in their earlier brief.

In its supplemental brief, PGE disagrees with the PUC's interpretation of its rules to require the 15-year

---

[3] The parties' agreement on that point is consistent with the PUC's rules, which define the word "rate" to include "price." OAR 860-029-0010(28).

fixed-price term to commence when the QF becomes operational, arguing that it does not plausibly account for their text, context, and, in particular, rulemaking history. PGE argues further that neither the rules, nor the fact that it filed new standard contracts, make this proceeding moot. In its view, vacating and remanding the order could provide grounds for withdrawing the new standard contracts that it filed; PGE suggests that we would have the authority in this proceeding to order the PUC to take action in the contract-approval proceedings under ORS 183.486(1)(b). PGE also suggests that a favorable decision by us could affect 60 power purchase agreements that it entered into with QFs between the entry of the final order on review and the effective date of the administrative rules. According to PGE, "If the Commission's policy was invalid, that calls into question the terms of a standard [power purchase agreement] issued to comply with that invalid policy."

Having considered the parties' arguments on the point, we conclude that the PUC's rulemaking has mooted this proceeding. "An appeal becomes moot when a decision 'will no longer have a practical effect on the rights or obligations of a party.'" *City of Cave Junction v. State of Oregon*, 289 Or App 216, 222-23, 410 P3d 306 (2017) (quoting *State v. Walraven*, 282 Or App 649, 654, 385 P3d 1178 (2016)). Here, the issues raised by PGE are (1) whether the PUC acted outside the boundaries of its authority by prospectively clarifying agency policy in a complaint proceeding under ORS 756.500; and (2) whether substantial reason supports the PUC's determination that the policy announced in Order 05-584 required the 15-year fixed-price term to start upon delivery of power.

The PUC's act of formal rulemaking has mooted the first issue because, whether or not the PUC had the authority to announce policy in the context of a complaint proceeding, its act of rulemaking has superseded any policy announced. Even if the PUC should have engaged in rulemaking or some other formal process to announce what it did in the order on review, as PGE contends it should have, it has now done so, thereby rendering academic the question of whether it is procedurally proper for the PUC to do what

it did in terms of announcing prospective policy in an order issued in a complaint proceeding.

As for the substantial reason issue, that is also academic at this point. As of now, the PUC's rules set forth its current policy for the fixed-price terms of power purchase agreements with QFs. That is so regardless of what party is right about how those rules should be interpreted (a point we do not resolve); one way or another, the rules, not the order on review, are the current source of the PUC's articulation of its policy on the point. If PGE believes that the rules allow for standard contracts containing terms different from the ones that it filed in response to the order on review, then it can seek approval of new standard contracts under the terms of the rules. An order from us directing the PUC to vacate its approval of the standard contracts that PGE filed in accordance with the order would not alter what is now the case: Going forward, PGE's standard contracts must satisfy the administrative rules, which the PUC is bound to follow. *See Harsh Investment Corp. v. State Housing Division*, 88 Or App 151, 157, 744 P2d 588 (1987), *rev den*, 305 Or 273 (1988) (having promulgated administrative rules, an agency must follow them).

That PGE opted to enter into 60 power purchase agreements between the time the order on review was entered and the effective date of the rules, apparently using the standard form contract that it was ordered to file, does not render this proceeding justiciable. PGE asserts that a ruling in its favor would call the terms of those contracts into question, and that is why this proceeding is not moot. But there has never been any question that Order 05-584 *allowed* for power purchase agreements with QFs in which the 15-year fixed-price term started to run when the QF started to deliver power. The only question was whether Order 05-584 *also* allowed for power purchase agreements where the 15-year fixed-price term started earlier, upon contract execution. In other words, there is no basis to think that the executed power purchase agreements *conflict* with Order 05-584 by having the 15-year fixed-price term start when the QF becomes operational, or to otherwise question the validity of any such terms.

Beyond that, there is no nonspeculative basis to conclude that a ruling in PGE's favor on the issues raised would provide it with grounds for avoiding power purchase agreements that it executed of its own accord with QFs that are not parties to this proceeding. That is, even if we were to rule that the PUC somehow overstepped its authority or acted without substantial reason in clarifying in the order on review how the 15-year fixed-price terms were to operate, there is no nonspeculative basis to think that PGE would be entitled to avoid the bargains that it made with nonparties to this proceeding, even if PGE would have preferred to have made those bargains on different terms.

Petition for judicial review dismissed as moot.